1  David L. Ross (FL BAR 337110)
2  Law Offices of David L. Ross, P.A.
   9454 Wilshire Blvd., Penthouse Suite
3  Beverly Hills, CA 90212
   MAILING ADDRESS:
4  P.O. Box 18137
   Beverly Hills, CA 90209
5  TEL:   (310) 860-9620
   FAX:   (310) 860-9624
6  EMAIL: dross@rrhlaw.com
7
   Attorneys for Petitioner
8  HERGUAN UNIVERSITY, and
   JERRY YUN FEI WANG
9

**FILED**

AUG 2 0 2012

RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

10

11          **IN THE UNITED STATES DISTRICT COURT**

12        **FOR THE NORTHERN DISTRICT OF CALIFORNIA**

13  HERGUAN UNIVERSITY, and          )   Case No.  **CV12-04364**
14  JERRY YUN FEI WANG               )
                                     )                    **HRL**
15      Petitioners,                 )
                                     )   **PETITIONER'S EX PARTE**
16         v.                        )   **APPLICATION TO HEAR**
                                     )   **MOTION FOR TEMPORARY**
17                                   )   **RESTRAINING ORDER**
                                     )
18  IMMIGRATION AND CUSTOMS          )
    ENFORCEMENT (ICE), AND STUDENT   )
19  AND EXCHANGE VISITOR PROGRAM     )
    (SEVP)                           )
20                                   )
                                     )
21      Respondents.                 )
                                     )
22  _____)

23

24      Petitioners, HERGUAN UNIVERSITY (hereinafter "HERGUAN") and JERRY YUN FEI

25  WANG (hereinafter "WANG"), hereby submit this ex parte application to hear its Motion for a

26  Temporary Restraining Order.  Petitioner HERGUAN is in immediate danger of losing all of its

27  assets and being closed down due to Respondents' failure to permit Petitioner to have a Designated

28  School Official ("DSO") to administer the Student and Exchange Visitor Information Service

1    ("SEVIS") and access to SEVP, a mandatory prerequisite for maintaining its F-1 visa foreign

2    students at Petitioner's University in accordance with its approved I-17 petition permitting it to

3    enroll and educate foreign students. In an ultra vires act, Respondents have told Petitioners' students

4    that they must leave Petitioner's University even though its I-17 petition is still valid.[1]   See

5    EXHIBIT '1' (Declaration of Jerry Yun Fei Wang).

6

7    Additionally, Respondents have issued a Notice of Intent to Withdraw the I-17 approval of

8    Petitioner, and given Petitioners thirty (30) days from August 2, 2012,[2] in which to present all

9    school documentation in rebuttal thereof.[3]  See EXHIBIT '4' (Notice of Intent to Withdraw).  This

10

---

11   [1] ICE had no basis for communicating this to the students since an I-17 is valid until
12   withdrawn, and only AFTER the Petitioner is accorded full due process rights to respond, be
     interviewed, and have the matter reviewed both by SEVP and by administrative appeal.  This is
13   normally a lengthy process.  However, in the instant matter, Respondents are attempting to
14   circumvent this process by preventing the University from accessing SEVP and SEVIS by
     summarily baring Petitioner WANG from accessing his DSO ID and Password and holding up for
15   more than a year designation of the other two (2) DSO's.  See 8 C.F.R. 214.4(i)(1)(&(2) which
     states in pertinent part, "...SEVP will not determine a SEVIS access termination date for that school
16   until the appeals process has concluded and the...withdrawal has been upheld unless a school whose
     certification is withdrawn...is suspected of criminal activity..."  Either way, by its own regulations,
17   SEVP cannot terminate access to SEVIS (as was done to Petitioner by removing Mr. Wang's access
18   to his SEVP ID and Password) until, at the very minimum, the I-17 certification **is withdrawn**, even
     if the school is suspected of criminal activity - which it is not.  In the instant matter, the I-17
19   certification has not been withdrawn - the initial process to do so has only just begun, assuming
     service of the Notice of Intent to Withdraw is valid.  And, per 8 C.F.R. 214.3(l)(1)(ii) the school
20   **must** have a DSO to operate where there are foreign students on F-1 visas.

21   [2] The Notice of Intent to Withdraw is undated but was presented to Jerry Yun Fei Wang while
22   he was physically restrained and under arrest by ICE and forced under duress and threat to
     acknowledge receipt.  Although Mr. Wang was under arrest and restrained, he was not accorded
23   Miranda rights before being presented with the said Notice of Intent.  It is Petitioner's intent to
     challenge the validity of service of this Notice.
24

25   [3] The allegations which mirror the criminal indictment concern charges that Jerry Yun Fei
     Wang before February of 2011 allowed others to access his ID and Password for school business -
26   see EXHIBIT '2' (SEVIS Password Security Policy Directive) which created a policy (not statutory
     or regulatory) as of March 14, 2011, not to permit DSO's to allow others to use their access to
27   SEVIS, as well as permitting curricular practical training (CPT) for students not at the Petitioner's
     sUniversity for 1 year - see EXHIBIT '3' (8 C.F.R. 214.2(f)(10)(i) which does not mandate the 1
28   year be at the same school and states in pertinent part, "Exceptions to the one academic year

# THE UNITED STATES OF AMERICA

NORTHERN **District of** CALIFORNIA

I, **WILLIAM L. WHITTAKER**, *Clerk of the United States District Court for the* Northern **District of** California *, do hereby certify that*

**DAVID LEONARD ROSS**

*was duly admitted and qualified as an Attorney and Counselor of said District Court on the* 5th *day of* March *, A.D. 19* 82

*In testimony whereof, I hereunto set my hand and affix the seal of said Court at my office in* San Francisco *in the* Northern *District of* California *, this* 8th *day of* March *, A.D. 19* 82

**William L. Whittaker** *Clerk*



# DECLARATION OF JERRY YUN FEI WANG

JERRY YUN FEI WANG declares under penalty of perjury as follows:

1.    I am the PDSO (primary DSO) for HERGUSAN University, a school authorized by the Department of Homeland Security, ICE, to issue I-20 forms for graduate studies.

2.    I was approved by SEVP on or about February of 2008, to have an ID number and Password to access SEVIS for purposes of complying with 8 C.F.R. 214.3(l)(ii) on behalf of HERGUAN University.

3.    On August 2, 2012, I was arrested at my home and physically restrained by ICE and forced under duress and threat to acknowledge receipt of an undated Notice of Intent to Withdraw I-17 certification for HERGUAN University.  At the time of my arrest my wife and 2 months old baby were upstairs in our house and ICE agents forced my wife to sit next to me without permitting her to bring our baby even though she was breast-feeding the baby.  In front of my wife ICE agents stated that if I did not sign the acknowledgment of service of the Notice of Intent to Withdraw bad things would happen.  My wife and I were terrified.  At the time, my hands were restrained behind me and I was not even allowed to read the document I signed.

4.    Subsequently, right afterward, ICE came to the University and seized our computers and data records of students and other items.  These items are critical to the school's ability to function and comply with SEVP rules and regulations and in inputting information into SEVIS.  The same day, access to my SEVP ID and Password was stopped and I could no longer go on the system.  Without

EXHIBIT '1'

access to SEVIS the University cannot continue to operate and will be forced to

close its doors and lose its assets.

5.    I, as principal DSO, am charged with responding to the Notice of Intent to

Withdraw I-17 certification whi8le at the same time I have been indicted for the

very same acts alleged in the Notice of Intent to Withdraw.

6.    This Declaration is based upon my personal knowledge, information and belief.

If called as a witness and placed under oath, I could and would testify thereto.

7.    I hereby attest that the facts set forth in our Motion for Temporary Restraining

Order are true and correct.

Executed under penalty of perjury this __1 7__ day of August, 2012, at San Jose,

California.

JERRY YUN FEI WANG

**To:** All SEVIS Users
**Date:** August 8, 2011
**Re:** SEVIS Password Security for PDSOs and DSOs
**Number:** 1108-01

---

### Background

The Student and Exchange Visitor Program (SEVP) is providing the following information to explain the Department of Homeland Security (DHS) password policy, required steps in designating a principal designated school official (PDSO) and the required documentation for assigning a designated school official (DSO). This broadcast provides general information on DHS password policy and outlines the requirements and documents to aid in the processing of PDSO or DSO updates.

### DHS Password Policy

PDSO/DSOs receive access to the Student and Exchange Visitor Information System (SEVIS) to conduct official DHS business only. Sharing SEVIS user identification (ID)/password is a violation of DHS Sensitive Systems Policy Directive 4300A, dated March 14, 2011:

- DHS users shall not share identification or authentication materials of any kind, nor shall any DHS user allow any other person to operate any DHS system by employing the user's identity.
- DHS users shall not share personal passwords.
- Non-DHS Federal employees, contractors, or others working on behalf of DHS who fail to comply with Department security policies are subject to having their access to DHS systems and facilities terminated, whether or not the failure results in criminal prosecution.

### PDSO Change Request

 A PDSO who is vacating the position should designate, prior to leaving, an existing DSO as the PDSO. Only the current PDSO can reassign PDSO roles. This is not an adjudicated event. The PDSO will complete the following steps to leave the role and assign someone else to it:

1. Log in to SEVIS and select "Edit School."
2. Advance to Page 5 of the Form I-17, "Petition for Approval of School for Attendance by Nonimmigrant Student," petition in SEVIS on the "Campus Information" screen.
3. Select "Official" on Page 5 of the I-17 petition.
4. At the "Assigning Campus Official" screen, assign a "no role" to yourself and assign the PDSO role to one of the existing DSO profiles.
5. Select "Accept Changes."
6. After automatically returning to the Page 5 "Campus Information" screen, select "Next" and then select "Submit" from the Submit I-17 Confirmation page.

EXHIBIT '2'

## Sec. 214.2(f)(10)

(10) Practical training . Practical training may be authorized to an F-1 student who has been lawfully enrolled on a full time basis, in a Service-approved college, university, conservatory, or seminary for one full academic year. This provision also includes students who, during their course of study, were enrolled in a study abroad program, if the student had spent at least one full academic term enrolled in a full course of study in the United States prior to studying abroad. A student may be authorized 12 months of practical tra ining, and becomes eligible for another 12 months of practical training when he or she changes to a higher educational level. Students in English language training programs are ineligible for practical training. An eligible student may request employment authorization for practical training in a position that is directly related to his or her major area of study. There are two types of practical training available: (Introductory text revised effective 1/1/03; 67 FR 76256 )

(i) Curricular practical training programs . An F-1 student may be authorized by the DSO to participate in a curricular practical training program that is an integral part of an established curriculum. Curricular practical training is defined to be alternative work/study, internship, cooperative education, or any other type of required internship or practicum that is offered by sponsoring employers through cooperative agreements with the school. Students who have received one year or more of full time curricular practical training are ineligible for post-completion academic training. Exceptions to the one academic year requirement are provided for students enrolled in graduate studies that require immediate participation in curricular practical training. A request for authorization for curricular practical training must be made to the DSO. A student may begin curricular practical training only after receiving his or her Form I-20 with the DSO endorsement. (Revised effective 1/1/03; 67 FR 76256 )

(A) Non-SEVIS process . A student must request authorization for curricular practical training using Form I-538. Upon approving the request for authorization, the DSO shall: certify Form I-538 and send the form to the Service's data processing center; endorse the student's Form I-20 ID with "full-time (or part-time) curricular practical training authorized for (employer) at (location) from (date) to (date)"; and sign and date the Form I-20ID before returning it to the student.

(B) SEVIS process . To grant authorization for a student to engage in curricular practical training, a DSO at a SEVIS school will update the student's record in SEVIS as being authorized for curricular practical training that is directly related to the student's major area of study. The DSO will indicate whether the training is full-time or part-time, the employer and location, and the employment start and end date. The DSO will then print a copy of the employment page of the SEVIS Form I -20 indicating that curricular practi cal training has been approved. The DSO must sign, date, and return the SEVIS Form I-20 to the student prior to the student's commencement of employment.

(ii) Optional practical training--

(A) Consistent with the application and approval process in paragraph (f)(11) of this section, a student may apply to USCIS for authorization for temporary employment for optional practical training directly related to the student's major area of study. The student may not begin optional practical training until the date indicated on his or her employment authorization document, Form I-766. A student may be granted authorization to engage in temporary employment for optional practical training: (Paragraph (f) (10)(ii)(A) revised 4/8/08; 73 FR 18944 ) (Paragraph (f)(10)(ii)(A) revised effective 1/1/03; 67 FR 76256 )

( 1 ) During the student's annual vacation and at other times when school is not in session, if the student is currently enrolled, and is eligible for registration and intends to register for the next term or session;

( 2 ) While school is in session, provided that practical training does not exceed 20 hours a week while school is in session; or

( 3 ) After completion of the course of study, or, for a student in a bachelor's, master's, or doctoral degree program, after completion of all course requirements for the degree (excluding thesis or equivalent). Continued enrollment, for the school's administrative purposes, after all requirements for the degree have been met does not preclude eligibility for optional practical training. A student must complete all practical training within a 14-month period following the completion of study, except that a 17- month extension pursuant to paragraph (f)(10)(ii)(C) of this section does not need to be completed within such 14-month period.

(B) Termination of practical training . Authorization to engage in optional practical training employment is automatically terminated when the student transfers to another school or begins study at another educational level. (Revised effective 1/1/03; 67 FR 76256 )

(C) 17-month extension of post-completion OPT for students with a science, technology, engineering, or mathematics (STEM) degree . Consistent with paragraph (f)(11)(i)(C) of this section, a qualified student may apply for an extension of OPT while in a valid period of post-completion OPT. The extension will be for an additional 17 months, for a maximum of 29 months of OPT, if all of the following requirements are met. (Revised 4/8/08; 73 FR 18944 )

( 1 ) The student has not previously received a 17-month OPT extension after earning a STEM degree.

( 2 ) The degree that was the basis for the student's current period of OPT is a bachelor's, master's, or doctoral degree in one of the degree programs on the current STEM Designated Degree Program List, published on the SEVP Web site at http://www.ice.gov/sevis .

( 3 ) The student's employer is registered in the E-Verify program, as evidenced by either a valid E-Verify company identification number or, if the employer is using a designated agent to perform the E-Verify queries, a valid E-Verify client company identification number, and the employer is a participant in good standing in the E-Verify program, as determined by USCIS.

( 4 ) The employer agrees to report the termination or departure of an OPT employee to the DSO at the student's school or through any other means or process identified by DHS if the termination or departure is prior to end of the authorized period of OPT. Such reporting must be made within 48 hours of the event. An employer shall consider a worker to have departed when the employer knows the student has left the employment or if the student has not reported for work for a period of 5 consecutive business days w ithout the consent of the employer, whichever occurs earlier.

(D) Action of the DSO-Non SEVIS schools . In making a recommendation for practical training, a designated school official must: (Heading revised effective 1/1/03; 67 FR 76256 )

(1) Certify on Form I-538 that the proposed employment is directly related to the student's major area of study and commensurate with the student's educational level;

EXHIBIT 'S'



*Homeland Security Investigations*

**U.S. Department of Homeland Security**
Potomac Center North
500 12th Street. SW MS5600
Washington. DC 20536-5600

**U.S. Immigration
and Customs
Enforcement**

School Code: SFR214F62918000

Jerry Wang
Herguan University
970 W. El Camino Real
Sunnyvale, CA 94087

**Student and Exchange Visitor Program
Notice of Intent to Withdraw**

**Notice**

This notice concerns the approval of your school for attendance by nonimmigrant students.   Title 8
Code of Federal Regulations (8 C.F.R.) section §214.4(a)(2) states:

> *Denial of recertification or Withdrawal on Notice*:  [Student and Exchange
> Visitor Program] SEVP certification of a school or school system for the
> attendance of nonimmigrant students, pursuant to sections 101(a)(15)(F)(i) and/or
> 101(a)(15)(M)(i) of the Immigration and Nationality Act, will be withdrawn on
> notice subsequent to out-of-cycle review, or recertification denied, if the school or
> school system is determined to no longer be entitled to certification for any valid
> and substantive reason including, but not limited to, the following:
>
> > (i) Failure to comply with §214.3(g)(1) without a subpoena.
> > (ii) Failure to comply with §214.3(g)(2).
> > (v) Willful issuance by a DSO of a false statement, including wrongful
> > certification of a statement by signature, in connection with a student's
> > school transfer or application for employment or practical training.
> > (xi) Issuance of Forms I-20 to aliens who will not be enrolled in or carry
> > full courses of study, as defined in §214.2(f)(6) or §214.2(m)(9).
> > (xix) Failure of a DSO to notify SEVP of material changes, such as
> > changes to the school's name, address, or curricular changes that represent
> > material changes to the scope of institution offerings as required by
> > §214.3(f)(1).

Pursuant to 8 C.F.R. §214.3(h)(3)(iii), SEVP may review a school's certification at any time to
verify a school's compliance with SEVP regulations and continued eligibility for SEVP
certification. In order to ascertain a school's compliance with regulatory reporting requirements
SEVP will, after a random review of records in SEVIS, ask for a sample of nonimmigrant student
records from among those observed to have irregular reporting by the school. If the irregular

EXHIBIT '4'

RE: SFR214F62918000
Page 2 of 31

reporting can be then verified by a review of the student records submitted to SEVP by the school, SEVP then presumes that such irregular reporting has occurred across the board on the entire population of nonimmigrant student records and bases the specific withdrawal allegation on its observations.

**Background**

As part of the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 (IIRIRA), Congress enacted a provision requiring the development a nonimmigrant student and exchange visitor (EV) information collection and reporting system which became known as the Student and Exchange Visitor Information System (SEVIS).[1] SEVIS allows SEVP-approved schools and EV programs to collect, monitor, and submit data directly to the Department of Homeland Security (DHS). SEVIS also makes it easier for DHS personnel and officers to ensure that each school or EV program complies with the reporting requirements set forth in the federal regulations. Full execution and expansion of SEVIS was mandated in 2001 by the Uniting and Strengthening America by Providing Appropriate Tools Required to Intercept and Obstruct Terrorism Act (USA PATRIOT ACT).[2]

In order to obtain SEVP certification, schools must first submit a Form I-17 (Petition for Approval of School for Attendance by Nonimmigrant Student) and other required information. Schools that are not accredited by a nationally-recognized accrediting body must submit a catalogue and a written statement detailing the school's size, the nature of its training facilities, the qualifications and salaries of its teaching, the attendance and scholastic grading policy, the amount and character of supervisory and consultative services available to students, and the school's finances, including a certified copy of the accountant's last statement of the school's net worth, income, and expenses. Any modification to the information contained on Form I-17 must be promptly reported to SEVP. Schools that fail to comply with the reporting requirements or fail to follow regulatory provisions concerning school certification and/or nonimmigrant student status are subject to withdrawal of their SEVP certification.

Herguan University, located in Sunnyvale, California, was certified by SEVP to issue Forms I-20 on February 14, 2008. At the time of the school's SEVP certification, the school was approved to issue Forms I-20 to nonimmigrant students for attendance in the school's Master's of Science in Traditional Oriental Medicine programs of study.

On November 17, 2010, SEVP representatives conducted a site visit at Herguan University's location at 595 Lawrence Expressway, Sunnyvale, CA. Upon completion of the site visit, the school was served with a Request for Evidence (RFE), and the school's response to the RFE was received by SEVP on December 20, 2010.

On April 20, 2011, a Request for Student Records was issued to Herguan University, which requested student records for forty (40) nonimmigrant students who had been issued Forms I-20 and subsequently enrolled by Herguan University. SEVP received the requested records from the school on May 13, 2011.

---

[1] IIRIRA, Pub. L. No. 104-208, § 641, 110 Stat. 3009-546, ___ (1996) (codified at 8 U.S.C. § 1372).
[2] USA PATRIOT ACT, Pub. L. No. 107-56, § 416, 115 Stat. 272, ___ (2001).

RE: SFR214F62918000
Page 3 of 31

On December 1, 2011, SEVP issued a Request for Evidence – Out-of-Cycle Review to Herguan University subsequent to a Form I-17 update to change location the school submitted in SEVIS on July 1, 2011. SEVP received the school's response, which included a response to an additional request for nonimmigrant student records, on January 5, 2012.

As of August 2, 2012, Herguan University enrolls 626 Active nonimmigrant students in SEVIS and has issued an additional 49 Initial status Forms I-20 to potential F-1 nonimmigrant students for future enrollment. The school's Form I-17 shows that the school is currently certified by SEVP to issue Forms I-20 for Master of Science degree programs. It has been determined that Herguan University has failed to comply with federal regulations governing nonimmigrant students by failing to properly maintain nonimmigrant student records, willfully certifying work authorization for ineligible nonimmigrant students, and issuing Forms I-20 to students for enrollment in programs of study which have not been certified by SEVP. As demonstrated by the issuance of federal search warrants and related criminal arrests on Herguan University and its Designated School Officials (DSOs), SEVP has reason to believe that Herguan University is engaging in criminal activity including immigration fraud and seeks to withdraw the school's access to SEVIS in an attempt to halt any further civil or criminal violations. SEVP is basing the issuance of this NOIW on UNVA's noncompliance with the federal regulations detailed in the sections below.

## Reasons for Withdrawal

**Reason 1: Failure to comply with 8 C.F.R. §214.3(g)(1) without a subpoena.**

*Controlling regulation*: 8 C.F.R. §214.2(f)(10)(i), §214.3(g)(1).
**See 8 C.F.R. §214.4(a)(2)(i)**

*8 C.F.R. §214.2(f)(10)(i), Curricular practical training, states in pertinent part:*

> *An F–1 student may be authorized by the DSO to participate in a curricular practical training program that is an integral part of an established curriculum. Curricular practical training is defined to be alternative work/study, internship, cooperative education, or any other type of required internship or practicum that is offered by sponsoring employers through cooperative agreements with the school. Students who have received one year or more of full time curricular practical training are ineligible for post-completion academic training. Exceptions to the one academic year requirement are provided for students enrolled in graduate studies that require immediate participation in curricular practical training. A request for authorization for curricular practical training must be made to the DSO. A student may begin curricular practical training only after receiving his or her Form I–20 with the DSO endorsement.*
>
> *[...]*
>
> *(B) SEVIS process. To grant authorization for a student to engage in curricular practical training, a DSO at a SEVIS school will update the student's record in SEVIS as being authorized for curricular practical training that is directly related to*

*the student's major area of study. The DSO will indicate whether the training is full-time or part-time, the employer and location, and the employment start and end date. The DSO will then print a copy of the employment page of the SEVIS Form I–20 indicating that curricular practical training has been approved. The DSO must sign, date, and return the SEVIS Form I–20 to the student prior to the student's commencement of employment.*

*8 C.F.R. §214.3(g)(1)*, Student records, *states in pertinent part:*

*An SEVP-certified school must keep records containing certain specific information and documents relating to each F–1 or M–1 student to whom it has issued a Form I–20, while the student is attending the school and until the school notifies SEVP, in accordance with the requirements of paragraphs (g)(1) and (2) of this section, that the student is not pursuing a full course of study. Student information not required for entry in SEVIS may be kept in the school's student system of records, but must be accessible to DSOs. The school must keep a record of having complied with the reporting requirements for at least three years after the student is no longer pursuing a full course of study. The school must maintain records on the student in accordance with paragraphs (g)(1) and (2) of this section if a school recommends reinstatement for a student who is out of status. The school must maintain records on the student for three years from the date of the denial if the reinstatement is denied. The DSO must make the information and documents required by this paragraph available, including academic transcripts, and must furnish them to DHS representatives upon request. Schools must maintain and be able to provide an academic transcript or other routinely maintained student records that reflect the total, unabridged academic history of the student at the institution, in accordance with paragraph (g)(1)(iv) of this section. All courses must be recorded in the academic period in which the course was taken and graded. The information and documents that the school must keep on each student are as follows:*

*(iii) Current address where the student and his or her dependents physically reside. In the event the student or his or her dependents cannot receive mail at such physical residence, the school must provide a mailing address in SEVIS. If the mailing address and the physical address are not the same, the school must maintain a record of both mailing and physical addresses and provide the physical location of residence of the student and his or her dependents to DHS upon request.*

*(iv) Record of coursework. Identify the student's degree program and field of study. For each course, give the periods of enrollment, course identification code and course title; the number of credits or contact hours, and the grade; the number of credits or clock hours, and for credit hour courses the credit unit; the term unit (semester hour, quarter hour, etc.). Include the date of withdrawal if the student withdrew from a course. Show the grade point average for each session or term. Show the cumulative credits or clock hours and cumulative grade point average. Narrative evaluation will be accepted in lieu of grades when the school uses no other type of grading.*

RE: SFR214F62918000
Page 5 of 31

Analysis

SEVP finds Herguan University failed to comply with recordkeeping requirements stipulated under 8 C.F.R. §214.3(g)(1) by providing nonimmigrant student records with contradictory records of coursework, nonimmigrant student addresses, and practical training information. 8 C.F.R. §214.3(g)(1)(iv) stipulates an SEVP-certified school must maintain each nonimmigrant student's record of coursework, including dates of enrollment, the courses the student has taken, and the final grade earned for each course taken. Schools must also maintain each nonimmigrant student's physical address, per 8 C.F.R. §214.3(g)(1)(iii). When a nonimmigrant student is authorized for Curricular Practical Training (CPT), 8 C.F.R. §214.2(f)(10)(i)(B) states the school must provide to SEVP "whether the training is full-time or part-time, the employer and location, and the employment start and end date." Nonimmigrant student records provided by Herguan University to SEVP's upon requests made on April 20, 2011 and December 1, 2011 contain discrepancies in information collected which are used by SEVP to meet these three requirements.

Nonimmigrant student Jyotsna Guleria's (N0004459950) student record was submitted to SEVP by Herguan University in response to the December 1, 2011 RFE. A review of this students SEVIS record shows that Guleria transferred to Herguan University from Northeastern University in Boston, MA. The address reported by Northeastern University during the nonimmigrant student's attendance at that school was 111 Norway Street, Apt. 404, Boston, MA. Guleria's SEVIS record was transferred to Herguan University on September 23, 2010 and the student was reported as Active in SEVIS on the same day, indicating enrollment in a program of study at Herguan University. On September 27, 2010 Herguan University authorized Guleria for CPT.

Student record submitted for Guleria in response to the forementioned RFE included a copy of her Herguan transcript, which stated Guleria was enrolled in three courses during the Fall 2010 term, which ran from September 7 to December 18, 2010. During this period, Guleria was also authorized for CPT by the school at "Kelly Services, Inc." in Boston, MA, which is approximately 3100 miles from the school's location in Sunnyvale, CA. Guleria's record included her employment offer letter from Kelly Services which provides her regular work hours as "40", or 40 hours per week. The school also included in a statement in Guleria's record that her employment at Kelly Services was full time. Furthermore, the school included a statement in Guleria's record attesting that until August 6, 2011, Guleria's physical US address was 111 Norway Street, Apt. #404, Boston, MA, the same address the student maintained while studying at Northeastern University. According to Guleria's student record and Herguan's class schedules posted on its website, Guleria was enrolled for the following courses during the Fall 2010 term: CS 565 Java Web Application (not found on the Fall 2010 class schedule); MIS 526 Management Information System on Saturday from 2 PM to 5 PM; and CS 508A Java and Object Oriented Programming on Wednesdays from 6:30 PM to 9:30 PM. Guleria's transcript indicates she received passing grades for each class. However, SEVP finds that Guleria's record was not accurately maintained as she could not have actually been enrolled in the CS 565 Java Web Application class as the schools own course schedule does not list the class offered that session, no could this nonimmigrant student actually have been enrolled in the MIS 526

Management Information System or the CS 508A Java and Object Oriented Programming courses as her physical address and CPT employer was located approximately 3100 miles from the school, making attending two weekly courses at the school while working a full-time position impossible.

Again, on January 10, 2011 the student's transcripts indicate that she had enrolled in and successfully completed three other courses at Herguan, CS 535-A Distributed and Mobile Operating Systems, CS 538 Software Test Automation and Tools, and CS 546 Unix/Linux Network Programming. Yet the nonimmigrant students SEVIS record indicates that Herguan University authorized the student for CPT employment on January 3, 2011, and records submitted by the school indicated that the student was employed again during this period of time by Kelly Services in Boston, MA and maintained the same U.S. address on Norway Street in Boston, MA. Thus, SEVP concludes that the nonimmigrant student's physical address and CPT employer was located approximately 3100 miles from the school, making attending weekly courses at the school while working a full-time position impossible.

Again, according to the student records submitted, Guleria was also enrolled in three courses during the Fall 2011 term, which ran from September 6 to December 17, 2011. During this term, Guleria was also authorized for CPT by the school at "Integrated Resources Inc." in Edison, NJ. Guleria's record included her employment offer letter from Integrated Resources which provides that she will be working at a client site in Cambridge, MA, which is approximately 3100 miles from the school's location in Sunnyvale, CA. The school also included in a statement in Guleria's record that her employment at Integrated Resources, Inc. was full time. Furthermore, the school included a statement in Guleria's record attesting that after September 19, 2011, Guleria's physical US address was 1233 Mckinley Ave., Apt. #6, Sunnyvale, CA. According to Guleria's student record and Herguan's class schedules posted on its website, Guleria was enrolled for the following courses during the Fall 2011 term: CS 597 Design Project (not scheduled on the Fall 2011 class schedule); CS 511 Computer Organization and Structure on Saturdays from 3:30 PM to 6:30 PM; and CS 637 Web Services Development and XML on Saturdays from 9 AM to 12 PM. Guleria's transcript indicates she received passing grades for each class. However, SEVP finds that Guleria's record was not accurately maintained as she could not have actually been enrolled in CS 597 Design Project as the schools own course schedule does not list the class offered that session, nor could this nonimmigrant student actually have been enrolled in the CS 511 computer Organization and Structure or the CS 637 Web Services Development and XML courses as her physical address and CPT employer was located approximately 3100 miles from the school, making attending two weekly courses at the school while working a full-time position impossible.

Thus, based on the fact that neither Boston, MA nor Cambridge, MA is within a reasonably commutable distance of Sunnyvale, CA, making it impossible for the student to be residing at the reported U.S. address in SEVIS while maintaining the reported CPT employment and/or attend classes at Herguan, SEVP concludes that the school failed to maintain records on the student as required by 8 CFR 214.3(g)(1)(iv), and is subject to withdrawal of its SEVP certification pursuant to 8 C.F.R. 214.4(a)(2)(i).

RE: SFR214F62918000
Page 7 of 31

Nonimmigrant student Raghavender Reddy Kallu's ( N0003300919) student record was submitted to SEVP by Herguan University in response to the December 1, 2011 RFE. Kallu's SEVIS record indicates the nonimmigrant student transferred to Herguan University on May 18, 2010, and CPT was first authorized for the student on the same day.

The records submitted for Kallu included a copy of his Herguan transcript being with enrollment in classes in May 2010. The transcript stated that during the first required session (attendance in Summer sessions is optional for nonimmigrant students attending institutions who base their academic calendar on trimester sessions as Herguan does) Kallu was enrolled in three courses during the Fall 2010 term, which ran from September 7 to December 18. During this term, Kallu was also authorized for CPT by the school at "Zenvet Inc." in Piscataway, NJ, which is approximately 2900 miles from the school's location in Sunnyvale, CA, however another document submitted by the school indicates that Kallu's CPT employment was during the time located in Newburyport, MA, 290 miles from Piscataway, NJ and 3170 from Sunnyvale, CA. Furthermore, Kallu's record included his employment offer letter from Zenvet Inc. which provides that he will be working full-time at a client site in New Jersey. The school also included a statement in Kallu's record that his employment at Zenvet Inc. was full time. However, the school included a statement in Kallu's record attesting that  during the period of September 1, 2010 through December 2010, Kallu's physical US address was 915 Rivendell Way, Edison, NJ.

According to Kallu's student record and Herguan's class schedules posted on its website, Kallu was enrolled for the following courses during the Fall 2010 term: BUS 505 Business Economics on Mondays from 6:30 PM to 9:30 PM; MBA 597B Design Project 2 (not scheduled on the Fall 2010 class schedule); and FIN 520 Financial Accounting on Tuesdays from 6:30 PM to 9:30 PM. Kallu's transcript indicates he received a passing grade for FIN 520 Financial Accounting, however he received an F for the other two courses of study . Thus, based on analysis of the records submitted, SEVP finds that Kallu's student records were not accurately maintained as Kallu could not have actually been enrolled in MBA 597B Design Project 2 as the schools own course schedule does not list the class offered that session, nor could this nonimmigrant student actually been enrolled in the BUS 505 Business Economics or the FIN 520 Financial Accounting courses as his  physical address and/or CPT employer located approximately 3100 miles from the school, making attending two weekly courses at the school while working a full-time position across the country impossible.

Thus, based on the fact that neither Piscataway, NJ, Edison, NJ nor Newburyport, MA is within a reasonably commutable distance of Sunnyvale, CA, making it impossible for the student to be residing at the reported U.S. address during that time while maintaining the reported CPT employment while attending classes at Herguan, SEVP concludes that the school failed to maintain records on the student as required by 8 CFR 214.3(g)(1)(iv), and is subject to withdrawal of its SEVP certification pursuant to 8 C.F.R. 214.4(a)(2)(i).

Nonimmigrant student Preeti Kota's (N0007567821) student record was submitted to SEVP by Herguan University in response to the December 1, 2011 RFE. Kota's SEVIS record showed that the student was reported as enrolled in the school on November 2, 2010 and was authorized to participate in CPT on the same date.  The student record submitted to SEVP for Kota included a copy of her Herguan transcript, which stated Kota was enrolled in three courses during the Fall 2010 term, which ran from September 7 to December 18. SEVP too notes that the student could not have been truly attending the school during this session having been reported as enrolled

RE: SFR214F62918000
Page 8 of 31

almost two months after the session commenced. During this term, Kota was also authorized for CPT by the school at "Sapot Wystems [sic] Inc." in Katy, TX, which is approximately 1800 miles from the school's location in Sunnyvale, CA. Kota's record included her employment offer letter from Sapot Systems, dated September 1, 2010, which provides that her "present place of work will be at 25772 Kingland Blvd Suite 208, Katy, TX." The school also included in a statement in Kotas's record that her employment at Sapot Systems was full time. Furthermore, the school included a statement in Kota's record attesting that until August 4, 2011, Kota's physical US address was 9550 Fremont Ave., Apt. C2, Montclair, CA, which is approximately 1400 miles from her CPT employer location and approximately 400 miles from the school's location.

According to Kota's student record and Herguan's class schedules posted on its website, Kota was enrolled for the following courses during the Fall 2010 term: CS 577 Advanced Database Design & Development on Saturdays from 10 AM to 1 PM; CS 508 Java and Object Oriented Programming on Wednesdays from 6:30 PM to 9:30 PM; and CS 546 Unix/Linux Network Programming on Thursdays from 6:30 PM to 9:30 PM. Kota's transcript indicates she received passing grades for each course. However, SEVP finds that Kota's record was not accurately maintained as she not only could not have timely enrolled in her Fall 2010 courses but she could not have actually been enrolled in the three courses while maintaining a CPT employment approximately 1800 miles from the school and approximately 1400 from her physical address, making attending three weekly courses at the school while working a full-time position across the country impossible.

Thus, based on the fact that 1) the student was reported as enrolled in her course of study almost two months after school schedules show the classes commenced, and 2) neither Katy, TX nor Montclair, CA is within a reasonably commutable distance of Sunnyvale, CA, making it impossible for the student to be residing at the reported U.S. address during that time while maintaining the reported CPT employment as well as attending classes at Herguan, SEVP concludes that the school failed to maintain records on the student as required by 8 CFR 214.3(g)(1)(iv), and is subject to withdrawal of its SEVP certification pursuant to 8 C.F.R. 214.4(a)(2)(i).

Nonimmigrant student Abhinay Godikoppula's (N0004218289) student record was submitted to SEVP by Herguan University in response to the December 1, 2011 RFE. The student's SEVIS record shows that the student was registered in SEVIS as enrolled in a program of study at Herguan January 26, 2010 and approved for CPT on the same date, as well as on April 29, 2010 and again on August 27, 2010. The student record submitted to SEVP for Godikoppula's included a copy of his Herguan transcript, which stated Godikoppula was enrolled in three courses during the Spring 2010 term and five courses during the Summer 2010 term. The transcript shows the student as enrolled in only one class during the Fall 2010 session. During this time, Godikoppula was also authorized for CPT by the school at "Card Runners" in Chicago, IL and listed as residing in Chicago, IL, which is approximately 2200 miles from the school's location in Sunnyvale, CA.

According to Godikoppula's student record and Herguan's class schedules posted on its website, Godikoppula was enrolled for the following courses during the Spring 2010 term, which ran

RE: SFR214F62918000
Page 9 of 31

from January 11 to April 24: CS 597A Design Project 1 (not scheduled on the Spring 2010 class schedule); CS 599A Master's Thesis I (not scheduled on the Fall 2010 class schedule); and CS 562 Advanced Java and Internet Application on Mondays from 6:30 PM to 9:30 PM. Godikoppula's transcript indicates he received passing grades for each class. However, SEVP finds that Godikoppula's record was not accurately maintained as he could not have actually been enrolled in CS 597A Design Project 1 and CS 599A Master's Thesis I as the school's own course schedule indicates those courses as not being offered that session, the student could not have attended CS 562 Advanced Java and Internet Application course because his CPT employer was located approximately 2200 miles from the school, making attending a weekly course impossible. (SEVP did not address attendance by the nonimmigrant student in the Summer session as that session by regulation is not required in order for a nonimmigrant student to maintain status, and SEVP did not address the attendance of the student during the Fall session as records indicate that only one course was taken during that session as that was all the student was required to take in order to complete their program of study, see 8 CFR 214.2(f)(6)(iii)(C).)

Thus, based on the fact that Chicago, IL is not within a reasonably commutable distance of Sunnyvale, CA, making it impossible for the student to be residing at the reported U.S. address during that time while maintaining the reported CPT employment and while attending classes at Herguan, SEVP concludes that the school failed to maintain records on the student as required by 8 CFR 214.3(g)(1)(iv), and is subject to withdrawal of its SEVP certification pursuant to 8 C.F.R. 214.4(a)(2)(i).

Nonimmigrant student Sreenivas Artham's (N0007682634) student record was submitted to SEVP by Herguan University in response to the December 1, 2011 RFE. ..The student's SEVIS record shows that the student was registered in SEVIS as enrolled in a program of study at Herguan November 6, 2010 (the same day the record was created, however SEVP notes that the arrival information for the student on his SEVIS records shows that the student did not arrive in the United States until November 21, 2010, thus the school commenced falsely reporting on the student as of the November 6, 2010 date) and the student was approved for CPT on November 23, 2010, as well as on December 24, 2010, May 10, 2011 and again on September 2, 2011. The student record submitted to SEVP for Artham included a copy of his Herguan transcript, which stated Artham was enrolled in three courses during the Fall 2010 term. SEVP too notes that the student could not have been truly attending the school during this session having been reported as enrolled almost two months after the session commenced. During this term, Artham was also authorized for CPT by the school at "Sree Enterprise Solutions Inc." in Irving, TX, which is approximately 1700 miles from the school's location and the student's home address in Sunnyvale, CA. According to Artham's student record and Herguan's class schedules posted on its website, Artham was enrolled for the following courses during the Fall 2010 term, which ran from September 7 to December 18: CS 599A Masters Thesis 1 (not scheduled on the Fall 2010 class schedule); CS 577 Advanced Database Design & Development on Saturdays from 10 AM to 1 PM; and CS 546 Unix/Linux Network Programming on Tuesdays from 6:30 PM to 9:30 PM. Artham's transcript indicates he received passing grades for each class. Thus, based on analysis of the records submitted, SEVP finds that Kallu's student records were not accurately maintained as Kallu could not have 1) been enrolled in a course of study before his arrival in the United States; 2) been enrolled in a course of study and successfully completed that course of study when his enrollment took place approximately two months after the published start date for

that course of study; 3) actually been enrolled in CS 599A Masters Thesis 1 as the schools own course schedule does not list the class offered that session; and 4) actually been enrolled in the CS 577 Advanced Database Design & Development or the CS 546 Unix/Linux Network Programming courses as his CPT employer was located approximately 1700 miles from the school, making attending two weekly courses impossible.

Thus, based on the fact that 1) the nonimmigrant student's SEVIS record indicates that the student did not arrive in the United States until after the school reported the student as enrolled in their course of study at the school; 2) the student was reported as enrolled in her course of study almost two months after school schedules show the classes commenced, and 3) Irving, TX is not within a reasonably commutable distance of Sunnyvale, CA, making it impossible for the student to be residing at the reported U.S. address during that time while maintaining the reported CPT employment as well as attending classes at Herguan, SEVP concludes that the school failed to maintain records on the student as required by 8 CFR 214.3(g)(1)(iv), and is subject to withdrawal of its SEVP certification pursuant to 8 C.F.R. 214.4(a)(2)(i).

Nonimmigrant student Swapna Keerthi's (N0007567821) student record was submitted to SEVP by Herguan University in response to the December 1, 2011 RFE. The student's SEVIS record shows that the student was registered in SEVIS as enrolled in a program of study at Herguan University November 2, 2010 and the student was approved for CPT on November 2, 2010, as well as on December 27, 2010, May 4, 2011 and again on September 2, 2011. The student record submitted to SEVP for Keerthi included a copy of his Herguan transcript, which stated Keerthi was enrolled in three courses during the Fall 2010 term. During this term, Keerthi was also authorized for CPT by the school at "HCL Global Systems Inc." in Farmington Hills, MI, which is approximately 2400 miles from the school's location in Sunnyvale, CA. The school also reported Keerthi's home address at 9448 Valley ranch Parkway, Irving, TX during this period, which is approximately 1400 miles from the school's location in Sunnyvale, CA and approximately 1000 miles from her CPT employer in Farmington Hills, MI. According to Keerthi's student record and Herguan's class schedules posted on its website, Keerthi was enrolled for the following courses during the Fall 2010 term, which ran from September 7 to December 18 (SEVP too notes that the student could not have been truly attending the school during this session having been reported as enrolled almost two months after the session commenced): CS 508A Java and Object Oriented Programming on Wednesdays from 6:30 PM to 9:30 PM; CS 501 Computer Architecture on Mondays from 6:30 PM to 9:30 PM; and CS 546 Unix/Linux Network Programming on Tuesdays from 6:30 PM to 9:30 PM. Keerthi's transcript indicates she received passing grades for each class. However, based on analysis of the records submitted, SEVP finds that Keerthi's student records were not accurately maintained as Keerthi could not have been enrolled in a course of study and successfully completed that course of study when his enrollment took place approximately two months after the published start date for that course of study, and Keerthi could not actually been enrolled in CS 508A Java and Object Oriented Programming, the CS 501 Computer Architecture, or the CS 546 Unix/Linux Network Programming courses as her reported home address was located approximately 1400 from the school and her CPT employer was located approximately 1700 miles from the school, making attending three weekly courses impossible.

RE: SFR214F62918000
Page 11 of 31

Thus, based on the fact that the student was reported as enrolled in her course of study almost two months after school schedules show the classes commenced, and based on the fact that neither Farmington Hills, MI nor Irving, TX is within a reasonably commutable distance of Sunnyvale, CA, making it impossible for the student to be residing at the reported U.S. address during that time while maintaining the reported CPT employment as well as attending classes at Herguan, SEVP concludes that the school failed to maintain records on the student as required by 8 CFR 214.3(g)(1)(iv), and is subject to withdrawal of its SEVP certification pursuant to 8 C.F.R. 214.4(a)(2)(i).

Nonimmigrant student Mohammed Mohiuddin's (N0002359919) student record was submitted to SEVP by Herguan University in response to the December 1, 2011 RFE. The student's SEVIS record shows that the student was initially registered in SEVIS as enrolled in a program of study at Herguan February 6, 2010 and the student was approved for CPT on June 7, 2010, July 1, 2010, August 19, 2010, December 27, 2010, October 2, 2011, January 4, 2012, February 11, 2012, and again on June 1, 2012. The student record submitted to SEVP for Mohiuddin included a copy of his Herguan transcript, which stated Mohiuddin was enrolled in three courses during the Spring 2010 term, which ran from January 11 to April 24. During this term, the school reported Mohiuddin's home address at 9505 University Terrace Drive, Charlotte, NC, which is approximately 2700 miles from the school's location in Sunnyvale, CA. According to Mohiuddin's student record and Herguan's class schedules posted on its website, Mohiuddin was enrolled for the following courses during the Spring 2010 term: MGT 540 International Business Management on Saturdays from 5 PM to 8 PM; MBA 497A Design Project (not scheduled on the Spring 2010 class schedule); and MBA 599A Master's Thesis 1 (not scheduled on the Spring 2010 class schedule). Mohiuddin's transcript indicates he received passing grades for each class. However, based on analysis of the records submitted, SEVP finds that Mohiuddin's student records were not accurately maintained as Mohiuddin could not have actually been enrolled in MBA 497A Design Project and MBA 599A Master's Thesis 1 as the schools own course schedule does not list these classes offered that session, and actually been enrolled in MGT 540 International Business Management course as his reported home address was located approximately 2700 from the school, making attending a weekly course in Sunnyvale, CA impossible.

Furthermore, according to the student records submitted, Mohiuddin was enrolled in three courses during the Summer 2010 term, which ran from May 11 to August 23. During this term, Mohiuddin was authorized for CPT by the school at "SWI Sublime Wireless Inc." in White Plains, NY from June 15, 2010 to June 30, 2010, which is approximately 3000 miles from the school's location in Sunnyvale, CA, and at "3S Network Inc." in Bellevue, WA from July 2, 2010 to August 31, 2010, which is approximately 850 miles from the school's location in Sunnyvale, CA. Mohiuddin's record also states that he continued to reside at 9505 University Terrace Drive, Charlotte, NC. According to Mohiuddin's student record and Herguan's class schedules posted on its website, Mohiuddin was enrolled for the following courses during the Summer 2010 term: FIN 510 Financial Management on Tuesdays from 6 PM to 9 PM; MBA 597B Design Project (not scheduled on the Summer 2010 class schedule); and MBA 599B Master's Thesis 2 (not scheduled on the Summer 2010 class schedule). Mohiuddin's transcript indicates he received passing grades for the FIN 510 and MBA 597B courses. However, based on analysis of the records submitted, SEVP finds that Mohiuddin's student records were not

RE: SFR214F62918000
Page 12 of 31

accurately maintained as Mohiuddin could not have actually been enrolled in MBA 597B Design Project and MBA 599A Master's Thesis 2 as the schools own course schedule does not list these classes as offered that session, and actually been enrolled in the FIN 510 Financial Management course, working at the addresses reported in his CPT authorization, and living at the physical address reported by the school, as his home address was located approximately 2700 from the school, approximately 650 miles from SWI Sublime Wireless Inc., and approximately 2800 miles from 3S Network Inc., making attending a weekly course Sunnyvale, CA impossible.

Mohiuddin was also enrolled in three courses during the Spring 2011 term, which ran from January 10 to April 23. During this term, Mohiuddin was authorized for CPT by the school at "Sublime Wireless, Inc." in White Plains, NY, which is approximately 3000 miles from the school's location in Sunnyvale, CA. Mohiuddin's record also states that he continued to reside at 9505 University Terrace Drive, Charlotte, NC. According to Mohiuddin's student record and Herguan's class schedules posted on its website, Mohiuddin was enrolled for the following courses during the Spring 2011 term: HRM 522 Communications for Managers on Fridays from 6:30 PM to 9:30 PM; FIN 510 Financial Management on Tuesdays from 6:30 PM to 9:30 PM; and MBA 395A Internship 1 (not scheduled on the Spring 2011 class schedule). Mohiuddin's transcript indicates he received passing grades each course. However, SEVP finds that Mohiuddin's record was not accurately maintained as he could not have actually been enrolled in MBA 395A Internship 1 as the schools own course schedule does not list these classes as offered that session and been actually enrolled in FIN 510 Financial Management or HRM 522 Communications for Managers courses, working at the address reported in his CPT authorization, and living at the physical address reported by the school as his home address was located approximately 2700 from the school and approximately 650 miles from Sublime Wireless Inc., while his CPT address was located 3000 miles from the school, making attending two weekly courses impossible.

Mohiuddin was also enrolled in three courses during the Summer 2011 term, which ran from May 9 to August 20. During this term, Mohiuddin's record states that he continued to reside at 9505 University Terrace Drive, Charlotte, NC until August 3, 2011. According to Mohiuddin's student record and Herguan's class schedules posted on its website, Mohiuddin was enrolled for the following courses during the Summer 2011 term: MIS 526 Management Information System on Thursdays from 6:30 PM to 9:30 PM; MBA 497A Design Project (not scheduled on the Summer 2011 class schedule); and MGT 602 Strategic Management on Sundays from 4 PM to 7 PM. Mohiuddin's transcript indicates he received passing grades for each class. However, SEVP finds that Mohiuddin's record was not accurately maintained as he could not have actually been enrolled in MBA 497A Design Project as the schools own course schedule does not list these classes as offered that session and been actually enrolled in MIS 526 Management Information System or MGT 602 Strategic Management courses as his reported home address was located approximately 2700 from the school, making attending two weekly courses in Sunnyvale, CA impossible.

Thus, based on the fact that the student was reported as enrolled in a course of study that neither Charlotte, NC, White Plains, NY nor Bellvue, WA is within a reasonably commutable distance of Sunnyvale, CA, the school's location, making it impossible for the student to be residing at the reported U.S. address during that time while maintaining the reported CPT employment as

RE: SFR214F62918000
Page 13 of 31

well as attending classes at Herguan University, SEVP concludes that the school failed to
maintain records on the student as required by 8 CFR 214.3(g)(1)(iv), and is subject to
withdrawal of its SEVP certification pursuant to 8 C.F.R. 214.4(a)(2)(i).

For each of the nonimmigrant students cited above, the SEVIS record, records of coursework,
practical training information, and physical addresses reported by the school contradict the
validity of one another. What the school reports for one of these records precludes the accuracy
of what the school reported for one or both of the other records. 8 C.F.R. §214.3(g)(1) and 8
C.F.R. §214.2(f)(10)(i) require schools to maintain these records. A failure to maintain these
records accurately constitutes a failure to comply with the regulation itself. Therefore, SEVP
finds the school failed to comply with 8 C.F.R. §214.3(g)(1), and as such, the school is subject to
withdrawal pursuant to 8 C.F.R. §214.4(a)(2)(i).

**Reason 2: Failure to comply with §214.3(g)(2).**

*Controlling regulations*: *8 CFR §214.3(g)(2).*
**See 8 CFR §214.4(a)(2)(ii).**

*8 CFR §214.3(g)(2),* Reporting changes in student and school information, *states in pertinent
part:*

> *(i) Schools must update SEVIS with the current information within 21 days of a change
> in any of the information contained in paragraphs (f)(1) and (h)(3) of this section.
> (ii) Schools are also required to report within 21 days any change of the information
> contained in paragraph (g)(1) or the occurrence of the following events:*
>
> *(B) A change of the student's or dependent's legal name or U.S. address;*

Analysis:

SEVP also finds Herguan University failed to notify SEVP of changes to nonimmigrant student
addresses, per 8 CFR 214.3(g)(2)(ii) where nonimmigrant students were authorized for CPT by
the school and both/either the reported employer addresses and the students' physical addresses
were not within reasonable commuting distance of either each other or the school's location. An
SEVP-certified school is required to maintain certain records about the nonimmigrant students
the school enrolls, per 8 CFR 214.3(g)(1). These records include current physical residence
address of the nonimmigrant students enrolled at its institution under part (iii) of the section, and
per 8 CFR 214.3(g)(2)(ii) and 214.3(g)(2)(ii)(B) any change to the nonimmigrant student's
physical address must be reported by the school to SEVP within 21 days.

Nonimmigrant student Jyotsna Guleria's (N0004459950) had been authorized for CPT at
Integrated Resources, Inc. in Edison, NJ from September 1, 2011 to December 31, 2011 while
enrolled in three class commencing September 6, 2011 at Herguan University. As of September
19, 2011, the school reported (as indicated on the student's SEVIS record) the student as residing
at 1233 Mckinley Ave, Apt #6, Sunnyvale, California, though the student is reported as having
been employed full-time in Edison, NJ since September 1, 2011. Edison, NJ is approximately

RE: SFR214F62918000
Page 14 of 31

2900 miles from Sunnyvale, CA. Thus, based on the fact that Edison, NJ is not within a
reasonably commutable distance of Sunnyvale, CA, making it impossible for the student to be
residing at the reported U.S. address in SEVIS while maintaining the reported employment,
SEVP concludes that the school failed to update the student's SEVIS record as required by 8
CFR §214.3(g)(2)(ii).

Nonimmigrant student Raghavender Reddy Kallu's (N0003300919) had been authorized for
CPT at Zenvet, Inc. in Newburyport, MA from May 17, 2010 to April 30, 2011, and then
authorized for CPT at HCL Global Systems, Inc. in Farmington, MI from May 1, 2011 to August
31,2011 while continuously being enrolled in classes during that time at Herguan University, in
Sunnyvale, CA. Throughout the student's employment until August 4, 2011, the school reported
the student as residing in Edison, NJ, although the student was reported as working in
Newportbury, MA since May 17, 2010. Additionally, the school on August 4, 2011 reported in
SEVIS the student's physical address to be Santa Clara, CA. Edison, NJ nor Farmington, MI is
not within a reasonably commutable distance of Sunnyvale, CA, making it impossible for the
student to be residing at the reported U.S. address in SEVIS while maintaining the reported
employment, SEVP concludes that the school failed to update the student's SEVIS record as
required by 8 CFR §214.3(g)(2)(ii).

Nonimmigrant student Swapna Keerthi's (N0007567821) had been authorized for CPT at Power
Key Solutions, Inc. in San Jose, CA from April 1, 2011 to December 31, 2011. Throughout the
student's employment until September 13, 2011, the school reported the student as residing in
Stamford, CT, although the student was reported as working in San Jose, CA since April 1, 2011.
Additionally, the school on September 13, 2011 reported in SEVIS the student's physical address
to be Sunnyvale, CA. Thus since Stamford, CT is not within a reasonably commutable distance
of San Jose, CA, making it impossible for the student to be residing at the reported U.S. address
in SEVIS while maintaining the reported employment, SEVP concludes that the school failed to
update the student's SEVIS record as required by 8 CFR §214.3(g)(2)(ii).

SEVP states the physical addresses of these students, as maintained in the school's student
records as well as in SEVIS, are all outside of a reasonable commuting distance of both or either
the school and the employer address listed for each student's CPT. Given that these students'
addresses are out of reasonable commutable distance of both or either the school and their CPT
employer's address, SEVP states that the school failed to notify SEVP of changes to the
students' physical address in their SEVIS records. Therefore, the school has violated the
requirements of 8 CFR §214.3(g)(2)(ii), and is subject to withdrawal of their SEVP-certification
per 8 CFR §214.4(a)(2)(ii).

**Reason 3: Willful issuance by a DSO of a false statement, including wrongful certification
of a statement by signature, in connection with a student's school transfer or application
for employment or practical training.**

*Controlling regulation*: 8 C.F.R. §214.2(f)(10).
**See 8 C.F.R. §214.4(a)(2)(v)**

*8 C.F.R. §214.2(f)(10),* Practical training, *states in pertinent part:*

*(10) Practical training. Practical training may be authorized to an F–1 student who has been lawfully enrolled on a full time basis, in a Service-approved college, university, conservatory, or seminary for one full academic year. This provision also includes students who, during their course of study, were enrolled in a study abroad program, if the student had spent at least one full academic term enrolled in a full course of study in the United States prior to studying abroad. A student may be authorized 12 months of practical training, and becomes eligible for another 12 months of practical training when he or she changes to a higher educational level. Students in English language training programs are ineligible for practical training. An eligible student may request employment authorization for practical training in a position that is directly related to his or her major area of study. There are two types of practical training available:*

*(i) Curricular practical training. An F–1 student may be authorized by the DSO to participate in a curricular practical training program that is an integral part of an established curriculum. Curricular practical training is defined to be alternative work/study, internship, cooperative education, or any other type of required internship or practicum that is offered by sponsoring employers through cooperative agreements with the school. Students who have received one year or more of full time curricular practical training are ineligible for post-completion academic training. Exceptions to the one academic year requirement are provided for students enrolled in graduate studies that require immediate participation in curricular practical training. A request for authorization for curricular practical training must be made to the DSO. A student may begin curricular practical training only after receiving his or her Form I–20 with the DSO endorsement.*

*[...]*

*(B) SEVIS process. To grant authorization for a student to engage in curricular practical training, a DSO at a SEVIS school will update the student's record in SEVIS as being authorized for curricular practical training that is directly related to the student's major area of study. The DSO will indicate whether the training is full-time or part-time, the employer and location, and the employment start and end date. The DSO will then print a copy of the employment page of the SEVIS Form I–20 indicating that curricular practical training has been approved. The DSO must sign, date, and return the SEVIS Form I–20 to the student prior to the student's commencement of employment.*

<u>Analysis</u>

SEVP finds that Herguan University has authorized F-1 nonimmigrant students for Curricular Practical Training (CPT) which is not integral to an established curriculum and is not offered by sponsoring employers through cooperative agreements with the school. Based upon review of the student records submitted by Herguan University, SEVP has determined that the school's DSOs

RE: SFR214F62918000
Page 16 of 31

have authorized CPT for students who were not enrolled in classes and that the school does not require cooperative agreements for students to be authorized for CPT.

F-1 nonimmigrant students may be authorized by DSOs of SEVP-certified schools for employment authorization known as practical training under 8 C.F.R. §214.2(f)(10). There are two kinds of practical training: Optional Practical Training (OPT) and Curricular Practical Training (CPT). OPT may be requested by nonimmigrant students through their DSOs, and is approved or denied by US Citizenship and Immigration Services (USCIS). While OPT employment must be directly related to a student's major area of study, OPT is a voluntary means of employment authorization, which allows nonimmigrant students to engage in practical training directly relate to their major area of study, but which is not required of or integral to the established curriculum (ie: the student is not required to participate in the practical training in order to graduate or complete their program of study).

In cases where the practical training is an integral part of the school's curriculum, DSOs may authorize nonimmigrant students for CPT, per 8 C.F.R. § §214.2(f)(10)(i). 8 C.F.R. §214.2(f)(10)(i) states, "An F–1 student may be authorized by the DSO to participate in a curricular practical training program that is an integral part of an established curriculum." To be integral to an established curriculum, a CPT program must first meet the definition outlined in 8 C.F.R. § §214.2(f)(10)(i), which states, "[CPT] is defined to be alternative work/study, internship, cooperative education, or any other type of required internship or practicum that is offered by sponsoring employers through cooperative agreements with the school." The regulation indicates CPT must be a required component of a nonimmigrant student's program of study and must be established through a cooperative agreement between the school and the sponsoring employers.

CPT's definition under 8 C.F.R. §214.2(f)(10)(i) stipulates that CPT must be integral to a student's course of study. SEVP's "DSO Training Course" offered to DSOs via SEVP's website[3] includes training on Curricular Practical Training. Topic 1: Basic Guidelines for CPT under Lesson 4 in the DSO Training Course states:

> CPT is only available to F-1 students when it is an integral part of an established curriculum. In practical terms, "integral part of an established curriculum" means an opportunity must be required by the curriculum or, if not required, the student must receive credit for the training.

The DSO Training Course offered by SEVP establishes the threshold for whether employment is CPT. The threshold requires that the employment is either required by the school's curriculum, or students must receive credit for participating in the employment. Without meeting one of the two stated requirements, employment cannot be considered CPT. As school officials are both encouraged and expected to complete the DSO Training Course when they are designated as PDSOs or DSOs, DSOs should be aware of SEVP's interpretation of CPT where the practical training should either be required by the curriculum or should confer credit to count towards a student's graduation.

---

[3] http://www.ice.gov/sevis/schools/new_schools/#

RE: SFR214F62918000
Page 17 of 31

In the December 1, 2011 RFE, SEVP requested the school submit "a statement explaining how the practical training is an integral part of an established curriculum" for a group of student records. In response, Herguan University submitted the following statement in each record:

> [Herguan University] students are required to take Curricular Practical Training for the courses that require hand on [sic] experience. [Herguan University] strongly recommend [sic] all students enrolled in any degree programs in [the school] to take at least one hand on [sic] experience course to allow student have practical knowledge [sic], which will help the student after they complete the program and searching for jobs [sic].

By Herguan University's own definition, CPT is authorized in conjunction with enrollment in a particular class. However, SEVP's review of Herguan University's SEVIS records and the nonimmigrant student records submitted to SEVP has found that the school frequently authorizes CPT for students while the school is not holding classes or while students are not enrolled in classes. According to the Herguan's academic calendars, the school was scheduled to be in session on the following dates (beginning with the Spring 2009 term):

- Spring 2009: January 19, 2009 to May 3, 2009
- Summer 2009: May 11, 2009 to August 23, 2009
- Fall 2009: September 7, 2009 to December 20, 2009
- Spring 2010: January 11, 2010 to April 24, 2010
- Summer 2010: May 3, 2010 to August 15, 2010
- Fall 2010: September 7, 2010 to December 18, 2010
- Spring 2011: January 10, 2011 to April 23, 2011
- Summer 2011: May 9, 2011 to August 20, 2011
- Fall 2011: September 6, 2011 to December 17, 2011
- Spring 2012: January 9, 2012 to April 21, 2012
- Summer 2012: May 7, 2012 to August 18, 2012

Based on these dates, SEVP has been able to determine that the school authorized CPT for students, listed in Addendum A, on 1437 occasions during a period when classes were not offered at the school. Herguan University defined that it considers CPT integral as it is a requirement for certain classes it offers. As students are not enrolled in classes when the school is not in session, any CPT authorized between terms cannot be integral. Therefore, the school willfully provided false statements in support of applications for CPT for each of the students listed in Addendum A.

In addition, Herguan University authorized CPT for students who were not enrolled in classes while the CPT was authorized. SEVP's review of the school's submitted student records found that the following students were not enrolled while on CPT:

Nonimmigrant student Ching-Chun Chien (N0006093568) was enrolled in the school's Master of Business Administration degree program from September 7, 2009 to September 6, 2011, according to her transcript requested by SEVP on December 1, 2011. Chien's record states Chien

RE: SFR214F62918000
Page 18 of 31

was authorized for CPT and enrolled in following courses: MBA 597A Design Project I, where Chien was enrolled from September 9, 2009 to December 20, 2009; CS 395A Practicum I, where Chien was enrolled from January 11, 2010 to April 24, 2010; MBA 395A Practicum I, where Chien was enrolled from September 7, 2010 to December 18, 2010; MBA 599B Masters Thesis 2, where Chien was enrolled from January 10, 2011 to April 23, 2011; and CS 598 Master's Project, where Chien was enrolled beginning September 6, 2011. According to her SEVIS record, Chien was authorized for CPT by the school for the following time frames: December 7, 2009 to December 31, 2009; January 1, 2010 to April 30, 2010; May 24, 2010 to August 30, 2010; August 31, 2010 to December 31, 2010; February 5, 2011 to March 7, 2011; March 10, 2011 to April 30, 2011; May 1, 2011 to August 30, 2011; September 1, 2011 to December 31, 2011; January 1, 2012 to April 30, 2012; and May 1, 2012 to August 31, 2012.

Upon comparing Chien's enrollment dates with her CPT authorization dates, SEVP has determined that Chien was not enrolled in classes when she was authorized for CPT from May 24, 2010 to August 30, 2010 and from May 1, 2011 to August 30, 2011. While the school states Chien's CPT from MBA 395A Practicum I extended to the Summer 2010 and Fall 2010 terms and MBA 599B Masters Thesis 2 extended to the Summer 2011 term, Chien's transcript states the courses began on September 7, 2010 and January 10, 2011, and were conferred grades on December 18, 2010 and April 23, 2011, respectively. Since the school provided no evidence that Chien was enrolled in these or any courses during the Summer 2010 or Summer 2011 terms and Chien's transcript indicates these courses lasted no longer than a term, SEVP does not accept the school's statement that the CPT from the Practicum I and Masters Thesis extended to the Summer 2010 and Summer 2011 terms. (By regulation, the school should have recommended and the student should have applied for pre-completion OPT during these time periods.) Furthermore, the school states that its CPT is integral because is required for courses which require hands on experience, however, Chien's CPT authorizations on May 24, 2010 and May 1, 2011 cannot be integral since Chien was not taking classes at the time.

Therefore, SEVP finds that Herguan University authorized CPT for a nonimmigrant student, Ching-Chun Chien, that was not an integral part of an established curriculum as required by 8 C.F.R. §214.2(f)(10)(i) when it authorized CPT for a student who was not enrolled in the classes which the school claimed to require CPT during the associated session.

Nonimmigrant student Daniel Prashanth Davids (N0002713009) was enrolled in the school's Master of Science in Computer Science degree program from May 10, 2010 to August 18, 2011 when he was Terminated in SEVIS for the reason Change of Status Approved. According to his record requested by SEVP on December 1, 2011, Davids was authorized for CPT and enrolled in the following courses: CS 541 Managing and Developing .Net Web Applications, where Davids was enrolled from May 10, 2010 to August 21, 2010; CS 565 Java Web Applications, where Davids was enrolled from September 7, 2010 to December 18, 2010; and CS 599 Masters Thesis, where Davids was enrolled from May 9, 2011 to August 20, 2011. According to his SEVIS record, Davids was authorized for CPT by the school for the following time frames: June 5, 2010 to August 31, 2010; September 3, 2010 to December 31, 2010; January 1, 2011 to April 30, 2011; and May 1, 2011 to August 31, 2011.

RE: SFR214F62918000
Page 19 of 31

Upon comparing Davids' enrollment dates with his CPT authorization dates, SEVP has determined that Davids was not enrolled in any class where CPT is required when he was authorized for CPT from January 1, 2011 to April 30, 2011. While the school states Davids' CPT from CS 565 Java Web Applications extended to the Spring 2011 term, Davids' transcript provides that he received a grade for the course on December 18, 2010, prior to the January 1, 2011 CPT being issued. As the school states that its CPT is integral because is required for courses which require hands on experience, Davids' CPT authorization on January 1, 2011 cannot be integral since Davids was not taking classes at the time.

Therefore, SEVP finds that Herguan University authorized CPT for a nonimmigrant student, Daniel Prashanth Davids, that was not an integral part of an established curriculum as required by 8 C.F.R. §214.2(f)(10)(i) when it authorized CPT for a student who was not enrolled in the classes which the school claimed to require CPT during the associated session.

Nonimmigrant student Rama Laxma Reddy Kandimalla (N0004486017) was enrolled in the school's Master of Biotechnology Management degree program from February 4, 2008 to December 31, 2009. According to his record requested by SEVP on December 1, 2011, Kandimalla was authorized for CPT for enrollment in following courses: MBA 395A Practicum I, where Kandimalla was enrolled from January 19, 2009 to May 3, 2009; MBA 597A Design Project 1, where Kandimalla was enrolled from January 19, 2009 to May 3, 2009; and MBA 395B Practicum II, where Kandimalla was enrolled from September 7, 2009 to December 20, 2009. According to his SEVIS record, Kandimalla was authorized for CPT by the school for the following time frames: February 20, 2009 to May 30, 2009; June 1, 2009 to August 30, 2009; and August 31, 2009 to December 31, 2009.

Upon comparing Kandimalla's enrollment dates with his CPT authorization dates, SEVP has determined that Kandimalla was not enrolled in any class where CPT is required when he was authorized for CPT from June 1, 2009 to August 30, 2009. While the school states Kandimalla's CPT from MBA 597A Design Project 1 extended to the Summer 2009 term, Kandimalla's transcript provides that he received a grade for the course on May 3, 2009, prior to the June 1, 2009 CPT being issued. As the school states that its CPT is integral because is required for courses which require hands on experience, Kandimalla's CPT authorization on June 1, 2009 cannot be integral since Kandimalla was not taking classes at the time.

Therefore, SEVP finds that Herguan University authorized CPT for a nonimmigrant student, Rama Laxma Reddy Kandimalla , that was not an integral part of an established curriculum as required by 8 C.F.R. §214.2(f)(10)(i) when it authorized CPT for a student who was not enrolled in the classes which the school claimed to require CPT during the associated session.

Nonimmigrant student Mohammed Mohiuddin (N0002359919) is enrolled in the school's Master of Business Administration degree program from January 11, 2010 to December 31, 2012. According to his record requested by SEVP on December 1, 2011, Mohiuddin was authorized for CPT for enrollment in following courses: MBA 597B Design Project II, where Mohiuddin was enrolled from May 10, 2010 to August 21, 2010; MBA 599A Master's Thesis I, where Mohiuddin was enrolled from January 11, 2010 to April 24, 2010; MBA 599B Master's Thesis II, where Mohiuddin was enrolled from May 10, 2010 to August 21, 2010; and MBA 395A

RE: SFR214F62918000
Page 20 of 31

Practicum I, where Mohiuddin was enrolled from January 1, 2011 to April 23, 2011. According to his SEVIS record, Mohiuddin was authorized for CPT by the school for the following time frames: June 15, 2010 to June 30, 2010; July 2, 2010 to August 31, 2010; September 13, 2010 to December 31, 2010; January 1, 2011 to April 30, 2011; September 26, 2011 to November 20, 2011; November 21 to December 31, 2011; January 1, 2012 to April 30, 2012; and May 24, 2012 to August 31, 2012.

Upon comparing Mohiuddin's enrollment dates with his CPT authorization dates, SEVP has determined that Mohiuddin was not enrolled in any class where CPT is required when he was authorized for CPT from September 13, 2010 to December 31, 2010. While the school states Mohiuddin's CPT from MBA 599B Master's Thesis II extended to the Fall 2010 term, Mohiuddin's transcript provides that he received a grade for the course on August 21, 2010, prior to the September 13, 2010 CPT being issued. As the school states that its CPT is integral because is required for courses which require hands on experience, Mohiuddin's CPT authorization on September 13, 2010 cannot be integral since Mohiuddin was not taking classes at the time.

Therefore, SEVP finds that Herguan University authorized CPT for a nonimmigrant student, Mohammed Mohiuddin, that was not an integral part of an established curriculum as required by 8 C.F.R. §214.2(f)(10)(i) when it authorized CPT for a student who was not enrolled in the classes which the school claimed to require CPT during the associated session.

Each of the above nonimmigrant students was authorized for CPT by Herguan University despite not enrolling in any corresponding class in the term the practical training was authorized. Although the school states that the CPT was extended from a class taken in a prior term, these classes were graded prior to the CPT being authorized and completed. Herguan University's statement explaining that CPT is required for students taking courses which require hands on experience indicate CPT might be integral. However, because the school authorized CPT when the students were either not enrolled in classes or not enrolled in classes where CPT was required, SEVP finds Herguan University authorized CPT which cannot be considered integral and therefore is subject to withdrawal pursuant to 8 C.F.R. §214.4(a)(2)(vi).

SEVP also finds that Herguan University authorized CPT for students without cooperative agreements with sponsoring employers, as required by 8 C.F.R. §214.2(f)(10)(i). The regulation states, "Curricular practical training is defined to be alternative work/study, internship, cooperative education, or any other type of required internship or practicum that is offered by sponsoring employers through cooperative agreements with the school." Based upon this definition of CPT, it may be concluded that practical training may not be considered CPT unless the school has cultivated a cooperative agreement with the students' sponsoring employers.

In its response to SEVP's April 20, 2011 Request for Student Records, Herguan University included a statement in response to SEVP's request for copies of the cooperative agreements between the school and the students' CPT employers. The statement provides:

> Master's Thesis, Internships, Design Projects, Master Project are not required to provide agreement [sic]. Student are required [sic] to provide employment letter.

RE: SFR214F62918000
Page 21 of 31

Additionally, in its response to SEVP's December 1, 2011 RFE, Herguan University included a statement in response to SEVP's request for copies of the cooperative agreements between the school and the students' CPT employers. The statement provides:

> A cooperative agreement between the student's employer and Herguan University has not been required. Instead, the student is required to provide written documentation to the DSO that verifies the employer's name, physical address, student's job duties and the number of hours expected per week. This information is verified and tied to curriculum [sic] by the student's academic advisor. This documentation in total satisfies the requirements for Curricular Practical Training.

The school states outright that they do not have cooperative agreements with their students' sponsoring employers, despite the requirement in the regulations. Review of the student records requested by SEVP on April 20, 2011 and December 1, 2011 has found 149 students, listed in Addendum B which provides the students and the data in SEVIS for each CPT authorization where a cooperative agreement was not provided, were authorized CPT by the school without cooperative agreements with the sponsoring employers. While some students' records included "Internship Contracts", these contracts were not signed by the employers.

Furthermore, for the nonimmigrant student records where cooperative agreements were present, SEVP found a number of these documents to be unacceptable in meeting the requirements of the regulations. 8 C.F.R. §214.2(f)(10)(i) defines CPT as "alternative work/study, internship, cooperative education, or any other type of required internship or practicum that is offered by sponsoring employers through cooperative agreements with the school." This definition of CPT stipulates that practical training is only CPT when a cooperative agreement between the school and the sponsoring employers is in place. Therefore, CPT cannot be authorized for the student in SEVIS before the cooperative agreement is established because the practical training has not met the definition of CPT. SEVP finds Herguan University has authorized CPT for students prior to securing cooperative agreements and thus before the practical training met the definition of CPT.

Student Muhammed Lodhi's (N0003767834) record was requested by SEVP on April 20, 2011, which included a request for copies of cooperative agreements in connection with Lodhi's CPT authorization. Lodhi was authorized for CPT in SEVIS by Herguan University for the following dates: February 11, 2009 to March 21, 2009 at "Techflex Packaging, LLC"; March 21, 2009 to April 3, 2009 at "TechFlex Packaging, LLC"; and April 3, 2009 to August 30, 2009 at "Techflex". The school submitted a Practicum Agreement for Lodhi's CPT at "Tech flex Packing, LLC", dating from April 3, 2009 to August 30, 2009. While the agreement is signed by an "Employer Representative", the signature is dated April 25, 2011, two years after the CPT was authorized by the school. Without a cooperative agreement in place at the time of CPT's authorization, per 8 C.F.R. §214.2(f)(10)(i) the practical training does not meet the definition of CPT. Furthermore, the cooperative agreement does not include the dates of the two previous CPT authorizations. Therefore, SEVP finds that this document does not satisfy the requirement of a "cooperative agreement" under 8 C.F.R. §214.2(f)(10)(i) and thus the school wrongfully authorized the student for CPT.

RE: SFR214F62918000
Page 22 of 31

Student Bhagath Kumar Neerudu's (N0003883147) record was requested by SEVP on April 20, 2011, which included a request for copies of cooperative agreements in connection with Neeredu's CPT authorization. Neeredu was authorized for CPT in SEVIS by Herguan University for the following dates: December 9, 2010 to April 30, 2011 at "Horizon Technologies Inc."; November 14, 2011 to December 31, 2011 at "Horizon Technologies Inc"; and June 11, 2012 to August 31, 2012 at "eByte Technologies, Inc." The school submitted a Practicum Agreement for Neerudu's CPT at "Horizon Technologies Inc", dating from December 9, 2010 to April 30, 2011. While the agreement is signed by an "Employer Representative", the signature is dated April 25, 2011, more than four months after the CPT was authorized by the school. Without a cooperative agreement in place at the time of CPT's authorization, per 8 C.F.R. §214.2(f)(10)(i) the practical training does not meet the definition of CPT. Furthermore, the cooperative agreement does not include the dates of the other two CPT authorizations. Therefore, SEVP finds that this document does not satisfy the requirement of a "cooperative agreement" under 8 C.F.R. §214.2(f)(10)(i) and thus the school wrongfully authorized the student for CPT.

Student Varun Kumar Yerramalla's (N0004082933) record was requested by SEVP on April 20, 2011, which included a request for copies of cooperative agreements in connection with Yerramalla's CPT authorization. Yerramalla was authorized for CPT in SEVIS by Herguan University for the following dates: December 11, 2009 to December 20, 2009 at "MobileNet Services, Inc." The school submitted a Practicum Agreement for Yerramalla's CPT at "Mobile Net Services, Inc", dating from December 11, 2009 to December 20, 2009. While the agreement is signed by an "Employer Representative", the signature is dated April 25, 2011, more than sixteen months after the CPT was authorized by the school. Without a cooperative agreement in place at the time of CPT's authorization, per 8 C.F.R. §214.2(f)(10)(i) the practical training does not meet the definition of CPT. Furthermore, the cooperative agreement does not include the dates of the two previous CPT authorizations. Therefore, SEVP finds that this document does not satisfy the requirement of a "cooperative agreement" under 8 C.F.R. §214.2(f)(10)(i) and thus the school wrongfully authorized the student for CPT.

As each of the students listed above were wrongfully authorized for CPT by the school, Herguan University willfully issued false statements to SEVP in connection with their applications for practical training. Therefore, the school is subject to withdrawal pursuant to 8 C.F.R. §214.4(a)(2)(vi).

**Reason 4: Issuance of Forms I-20 to aliens who will not be enrolled in or carry full courses of study, as defined in §214.2(f)(6) or §214.2(m)(9).**

*Controlling regulation:* 8 C.F.R. §214.2(f)(6), §214.3(g)(2).
**See *8 C.F.R. §214.4(a)(2)(xi)***

*8 C.F.R. §214.2(f)(5),* Duration of status, *states in pertinent part:*

> *(iii) Annual vacation. An F–1 student at an academic institution is considered to be in status during the annual (or summer) vacation if the student is eligible and intends to register for the next term. A student attending a school on a quarter or trimester calendar who takes only one vacation a year during any one of the quarters or*

*trimesters instead of during the summer is considered to be in status during that vacation, if the student has completed the equivalent of an academic year prior to taking the vacation.*

*8 C.F.R. §214.2(f)(6),* Full course of study, *states in pertinent part:*

*(i) General. Successful completion of the full course of study must lead to the attainment of a specific educational or professional objective. A course of study at an institution not approved for attendance by foreign students as provided in §214.3(a)(3) does not satisfy this requirement. A "full course of study" as required by section 101(a)(15)(F)(i) of the Act means:*

*(A) Postgraduate study or postdoctoral study at a college or university, or undergraduate or postgraduate study at a conservatory or religious seminary, certified by a DSO as a full course of study;*
*[...]*
*(G) For F–1 students enrolled in classes for credit or classroom hours, no more than the equivalent of one class or three credits per session, term, semester, trimester, or quarter may be counted toward the full course of study requirement if the class is taken on-line or through distance education and does not require the student's physical attendance for classes, examination or other purposes integral to completion of the class. An on-line or distance education course is a course that is offered principally through the use of television, audio, or computer transmission including open broadcast, closed circuit, cable, microwave, or satellite, audio conferencing, or computer conferencing. If the F–1 student's course of study is in a language study program, no on-line or distance education classes may be considered to count toward a student's full course of study requirement.*

*(iii) Reduced course load. The designated school official may allow an F–1 student to engage in less than a full course of study as provided in this paragraph (f)(6)(iii). Except as otherwise noted, a reduced course load must consist of at least six semester or quarter hours, or half the clock hours required for a full course of study. A student who drops below a full course of study without the prior approval of the DSO will be considered out of status. On-campus employment pursuant to the terms of a scholarship, fellowship, or assistantship is deemed to be part of the academic program of a student otherwise taking a full course of study.*

*(A) Academic difficulties. The DSO may authorize a reduced course load on account of a student's initial difficulty with the English language or reading requirements, unfamiliarity with U.S. teaching methods, or improper course level placement. The student must resume a full course of study at the next available term, session, or semester, excluding a summer session, in order to maintain student status. A student previously authorized to drop below a full course of study due to academic difficulties is not eligible for a second authorization by the DSO due to academic difficulties while pursuing a course of study at that program level. A student authorized to drop below a full course of study for academic difficulties while*

*pursuing a course of study at a particular program level may still be authorized for a reduced course load due to an illness medical condition as provided for in paragraph (B) of this section.*

*(B) Medical conditions. The DSO may authorize a reduced course load (or, if necessary, no course load) due to a student's temporary illness or medical condition for a period of time not to exceed an aggregate of 12 months while the student is pursuing a course of study at a particular program level. In order to authorize a reduced course load based upon a medical condition, the student must provide medical documentation from a licensed medical doctor, doctor of osteopathy, or licensed clinical psychologist, to the DSO to substantiate the illness or medical condition. The student must provide current medical documentation and the DSO must reauthorize the drop below full course of study each new term, session, or semester. A student previously authorized to drop below a full course of study due to illness or medical condition for an aggregate of 12 months may not be authorized by a DSO to reduce his or her course load on subsequent occasions while pursuing a course of study at the same program level. A student may be authorized to reduce course load for a reason of illness or medical condition on more than one occasion while pursuing a course of study, so long as the aggregate period of that authorization does not exceed 12 months.*

*(C) Completion of course of study. The DSO may authorize a reduced course load in the student's final term, semester, or session if fewer courses are needed to complete the course of study. If the student is not required to take any additional courses to satisfy the requirements for completion, but continues to be enrolled for administrative purposes, the student is considered to have completed the course of study and must take action to maintain status. Such action may include application for change of status or departure from the U.S.*

*8 CFR 214.3(g)(2),* Reporting changes in student and school information, *states in pertinent part:*

*(i) Schools must update SEVIS with the current information within 21 days of a change in any of the information contained in paragraphs (f)(1) and (h)(3) of this section.*

*(ii) Schools are also required to report within 21 days any change of the information contained in paragraph (g)(1) or the occurrence of the following events:*

*(A) Any student who has failed to maintain status or complete his or her program*

Analysis

SEVP finds that Herguan University issued Forms I-20 to nonimmigrant students who were not to be enrolled in full courses of study as defined by 8 C.F.R. §214.2(f)(6). At the time of the school's SEVP certification, Herguan University's Form I-17 stated the school was engaged in

RE: SFR214F62918000
Page 25 of 31

Higher Education in fields #5 ("The school is engaged in") and #16 ("If the school is engaged in higher education, it does confer recognized bachelor's master's, doctor's, professional, or divinity degrees. Its credits are transferable to institutions of study which confer such degrees"), and conferred a Master's of Science degree in field #15 ("List the degrees available from the school"). Therefore, SEVP finds that nonimmigrant students attending Herguan University would be subject to the full course of study requirements of 8 C.F.R. §214.2(f)(6)(i)(A)[4], which stipulates that the DSO certifies the full course of study to SEVP. Additionally, in a case where a nonimmigrant student requests to drop below a full course of study, the school may only authorize it in the case of academic difficulties, medical conditions, or where a nonimmigrant student requires less than a full course of study in order to complete a course of study, per 8 C.F.R. §214.2(f)(6)(iii). Furthermore, nonimmigrant students who take an annual vacation must have been enrolled in a full course of study for a full academic year prior to taking their annual vacation and must enroll in a full time course of study following their annual vacation, per 8 C.F.R. §214.2(f)(5)(iii).

In response to SEVP's December 1, 2011 RFE, which requested the school to define how many credits per semester a student must enroll in to be considered enrolled in a full course of study, Herguan University's PDSO Jerry Wang submitted a statement which explained, "to be considered a full-time graduate student at Herguan University, a student must be enrolled for a minimum of 9 units of graduate level credit per semester." This statement is also supported by the school's 2011-2012 catalog, which also states a student must be enrolled in at least 9 units to be considered enrolled full time. Therefore, SEVP finds that Herguan University's DSOs certify to SEVP that nonimmigrant students are enrolled in full courses of study of 9 credits per semester when they are issued Forms I-20.

However, based upon review of nonimmigrant student records submitted to SEVP in response to request for evidence dated April 20, 2011 and December 1, 2011, SEVP finds that Herguan University has issued Forms I-20 to nonimmigrant students who did not enroll in full courses of study. The school represented to SEVP that the students had been enrolled in full courses of study when documents in their records indicated that they could not have been enrolled full time. Specifically, students who were authorized for CPT were found to be working and residing in locations several hundred miles away from the school while enrolled in 9 credits per semester in courses which met on a weekly basis. These students include:

Nonimmigrant student Ravikumar Gurram (N0004539670) was issued a Form I-20 by Herguan University for enrollment in the Master of Science in Computer Science degree program with a program start date of May 9, 2008 and a program end date of April 30, 2010. Based on the transcript in his student record submitted to SEVP in response to the December 1, 2011 RFE, Gurram was enrolled at the school during the Spring 2008, Summer 2008, Spring 2009, Summer 2009, and Spring 2010 school terms. During the Spring 2008 term which ran from January 25, 2008 to May 12, 2008, Gurram was enrolled in two courses for a total of six (6) credits. The record also included a statement by Herguan University in response to SEVP's inquiry whether the student dropped below a full course of study, which stated, "The student took one course in

---

[4] 8 C.F.R. §214.2(f)(6)(i)(A) defines a full course of study as, "postgraduate study or postdoctoral study at a college or university, or undergraduate or postgraduate study at a conservatory or religious seminary, certified by a DSO as a full course of study".

RE: SFR214F62918000
Page 26 of 31

spring 2010 since the student was on graduating semester [sic]." No statement was provided to explain why Gurram was enrolled below the nine (9) credits Herguan University certified as a full course of study during the Spring 2008 semester. Additionally, the Spring 2008 term was Gurran's first at the school and thus would have been required to enroll in a full course of study without authorization to drop below, per 8 C.F.R. §214.2(f)(5)(iii) and §214.2(f)(6)(iii). Therefore, SEVP finds that the school issued a Form I-20 to Gurram though he would not be enrolled in a full course of study and as such Herguan University is found to be in non-compliance with 8 CFR 214.2(f)(6)(i)(A) and 8 CFR 214.3(g)(2)(ii)(A).

Nonimmigrant student Mohammed Mohiuddin (N0002359919) was issued a Form I-20 by Herguan University for enrollment in the Master of Business Administration degree program with a program start date of February 6, 2010 and a program end date of December 31, 2012. Based on the transcript in his student record submitted to SEVP in response to the December 1, 2011 RFE, Mohiuddin was enrolled at the school during the Spring 2010, Summer 2010, Spring 2011, Summer 2011, and Fall 2011 school terms. During the Spring 2011 term which ran from January 10, 2011 to April 23, 2011, Mohiuddin was enrolled in three courses for a total of 6.5 credits. The record also included a statement by Herguan University in response to SEVP's inquiry whether the student dropped below a full course of study, which stated, "Not Applicable." No statement was provided to explain why Mohiuddin was enrolled below the nine (9) credits Herguan University certified as a full course of study during the Spring 2011 semester. Additionally, Mohiuddin was not enrolled in a full course of study at the school in the Fall 2010 term prior to the Spring 2011 term and thus would have been required to enroll in a full course of study without authorization to drop below, per 8 C.F.R. §214.2(f)(5)(iii) and §214.2(f)(6)(iii). Therefore, SEVP finds that the school issued a Form I-20 to Mohiuddin though he would not be enrolled in a full course of study and as such Herguan University is found to be in non-compliance with 8 CFR 214.2(f)(6)(i)(A) and 8 CFR 214.3(g)(2)(ii)(A).

Nonimmigrant student Abhijith Athreya Madugula (N0006033312) was issued a Form I-20 by Herguan University for enrollment in the Master of Business Administration degree program with a program start date of July 1, 2009 and a program end date of April 30, 2012. Based on the transcript in his student record submitted to SEVP in response to the December 1, 2011 RFE, Madugula was enrolled at the school during the Spring 2009, Summer 2009, Spring 2010, Fall 2010, Spring 2011, and Summer 2011 school terms. The record included a statement by Herguan University in response to SEVP's inquiry whether the student dropped below a full course of study, which stated, "Student's drop below full course of study for Summer 2010 was not detected by the academic unit and the student should have been registered full-time. We apologize for this oversight and are working diligently to ensure that this does not happen again." By the school's own admission, the student was not enrolled in a full course of study. Therefore, SEVP finds that the school issued a Form I-20 to Madugula though he would not be enrolled in a full course of study and as such Herguan University is found to be in non-compliance with 8 CFR 214.2(f)(6)(i)(A) and 8 CFR 214.3(g)(2)(ii)(A).

Each of the students listed above were not enrolled in full courses of study for significant periods of their program of study, but the school nonetheless continued to enroll the students and failed

AO 93 (Rev. 12/09) Search and Seizure Warrant

# UNITED STATES DISTRICT COURT

for the

Northern District of California

| | |
|---|---|
| In the Matter of the Search of | ) |
| | ) |
| **Administrative Offices of Herguan University and the University of East-West Medicine, located at 595 Lawrence Expressway, Sunnyvale, California** | ) Case No. 12 - 70860 PSG |
| | ) |
| | ) |
| | ) |

## SEARCH AND SEIZURE WARRANT

SEALED BY ORDER OF THE COURT

To:     Any authorized law enforcement officer

An application by a federal law enforcement officer or an attorney for the government requests the search of the following person or property located in the _____Northern_____ District of _____California_____
*(identify the person or describe the property to be searched and give its location)*:
Administrative Offices of Herguan University and the University of East-West Medicine, located at 595 Lawrence Expressway, Sunnyvale, California, as described in Attachment A.

The person or property to be searched, described above, is believed to conceal *(identify the person or describe the property to be seized)*:
Evidence, fruits, and/or instrumentalities of violations of 18 U.S.C. §§ 2; 371; 1001(a)(3); 1028A; 1030(a)(3); 1546(a), as described in Attachment B.

I find that the affidavit(s), or any recorded testimony, establish probable cause to search and seize the person or property.

YOU ARE COMMANDED to execute this warrant on or before ___8.13.12___
*(not to exceed 14 days)*

☑ in the daytime 6:00 a.m. to 10 p.m.     ☐ at any time in the day or night as I find reasonable cause has been established.

Unless delayed notice is authorized below, you must give a copy of the warrant and a receipt for the property taken to the person from whom, or from whose premises, the property was taken, or leave the copy and receipt at the place where the property was taken.

The officer executing this warrant, or an officer present during the execution of the warrant, must prepare an inventory as required by law and promptly return this warrant and inventory to United States Magistrate Judge Paul S. Grewal
_____
*(name)*

☐ I find that immediate notification may have an adverse result listed in 18 U.S.C. § 2705 (except for delay of trial), and authorize the officer executing this warrant to delay notice to the person who, or whose property, will be searched or seized *(check the appropriate box)*  ☐ for _____ days *(not to exceed 30)*.
                                        ☐ until, the facts justifying, the later specific date of _____.

Date and time issued:   7-31-12  ;  3 PC     _p-es_  _____
                                                        *Judge's Signature*

City and state:   San Jose, CA                U.S. Magistrate Judge Paul S. Grewal
                                                *Printed name and title*

EXHIBIT '5'

## ATTACHMENT B

### ITEMS TO BE SEIZED

All items and records which constitute evidence, fruits, or instrumentalities of violations of 18 U.S.C. § 371 (Conspiracy to Commit Visa Fraud); 18 U.S.C. § 1546(a) (Visa Fraud); 18 U.S.C. § 1030(a)(3) (Unauthorized Access to a Government Computer); 18 U.S.C. § 1001(a)(3) (Use of False Documents); 18 U.S.C. § 1028A (Aggravated Identity Theft); and 18 U.S.C. § 2 (Aiding and Abetting) as identified below.

As used in this Attachment, the term "records" includes all of the items described in whatever form and by whatever means they may have been created and/or stored. This includes any handmade, photographic, mechanical, electrical, electronic, paper, digital, and/or magnetic forms. It also includes items in the form of computer hardware, software, documentation, passwords, e-mail, and/or data security devices.

The items and records to be seized from the SUBJECT PREMISES (described in Attachment A) include:

1.  Records related the acquisition and maintenance of foreign student ("F-1") status for current and former foreign HERGUAN UNIVERSITY (HGU) and UNIVERSITY OF EAST-WEST MEDICINE (UEWM) students and applicants for the period between July 6, 2007, and the present, including visa applications, Forms I-20, Student an Exchange Visitor Information System (SEVIS) manuals and printouts, admissions applications and supporting documents, letters of acceptance/denial, supporting financial records, records of tuition and fee payments, attendance records, transcripts, diplomas, and records of any courses currently and previously held;

2.  Records related to HGU and UEWM's authorization to admit foreign nationals, including Forms I-17 and I-17A, and all supplemental documentation in support of those applications, including transfer letters, articulation agreements, employment letters, employment and academic records related to individuals named in such documents, payments related to the acquisition of transfer letters or articulation agreements, and correspondence related to the acquisition and filing of such documents;

3.  Applications, attendance sheets, and transcripts for Candace Zheng, Shane Guan, and David Wang.

4.    Travel records related to Jerry WANG, Su Tong, and Ying Wang for the period between February 14, 2008, and the present, including passports, visas, airline tickets, boarding passes, and airline ticket receipts;

5.    Address books, telephone lists and directories, and telephone records for Jerry WANG, Su Tong, and Ying Wang, between July 6, 2007, and the present;

6.    Financial records related to HGU, UEWM, Vital Core Biosystems, Inc.; International Institutes for Health and Healing; Jerry WANG, Su Tong, and Ying Wang, for the period between July 6, 2007, and the present, including but not limited to tax records, investment account records, bank account records, account applications, account statements, signature cards, withdrawal slips, debit and credit memos, checkbooks, deposit slips, canceled checks, client checks, cashier's checks, financial statements, wire transfer records, wiring instructions, loan records, and credit reports;

7.    Title, deed, escrow, lease, or other records for property purchased or leased by Jerry WANG, Su Tong, Ying Wang, HGU, or UEWM, for the period between February 14, 2008, and the present;

8.    Money orders, personal checks, cashier's checks, credit card receipts, and other receipts relating to or constituting proceeds from the production or filing of fraudulent visa applications or visa-related forms, or relating to or constituting payments from foreign nationals for the maintenance of immigration status, for the period between February 14, 2008, and the present;

9.    Items, documents, and effects showing residency and/or dominion and control of the place to be searched, including but not limited to keys, receipts, bills, canceled checks, mail envelopes, rental agreements, telephone records and bills, utility bills, and internet/cable provider statements for the period between July 6, 2007, and the present;

10.    Computer equipment and/or storage devices used to create or store the items, data, or records referenced in the paragraphs of this Attachment, pursuant to the protocol set forth in Attachment C; and

11.    Passwords, password files, test keys, encryption codes, operating manuals, and other information necessary to access the computer equipment, storage devices or data, as limited by Attachment C.

United States District Court for the Northern District of California

## PROTOCOL FOR SEARCHING DEVICES OR MEDIA
## THAT STORE DATA ELECTRONICALLY

THIS PROTOCOL WILL BE ATTACHED TO EACH SEARCH WARRANT
THAT AUTHORIZES A SEARCH OF ANY DEVICE OR MEDIA THAT
STORES DATA ELECTRONICALLY

It Also Will Be Incorporated, At Least As An Attachment,
in the Affidavit Supporting the Warrant

1.   In executing this warrant, the government will begin by ascertaining whether all or part of a search of a device or media that stores data electronically ("the device") reasonably can be completed at the location listed in the warrant ("the site") within a reasonable time.  If the search reasonably can be completed on site, the government will remove the device from the site only if removal is necessary to preserve evidence, or if the item is contraband, a forfeitable instrumentality of the crime, or the fruit of a crime.

2.   If the government determines that a search reasonably cannot be completed on site within a reasonable time period, the government must determine whether all or part of the authorized search can be completed by making a mirror image of, or in some other manner duplicating, the contents of the device and then conducting the forensic review of the mirror image or duplication off site. The government will complete a forensic review of that mirror image within 120 days of the execution of the search warrant.

3.   In a circumstance where the government determines that a mirror image of the contents of a device cannot be created on site in a reasonable time, the government may seize and retain that device for 60 days in order to make a mirror image of the contents of the device.

4.   When the government removes a device from the searched premises it may also remove any equipment or documents ("related equipment or documents") that reasonably appear to be necessary to create a mirror image of the contents of the device or conduct an off-site forensic review of a device.

5.     When the government removes a device or related equipment or documents from the site in order to create a mirror image of the device's contents or to conduct an off-site forensic review of the device, the government must file a return with a magistrate judge that identifies with particularity the removed device or related equipment or documents within 14 calendar days of the execution of the search warrant.

6.     Within a reasonable period of time, but not to exceed 60 calendar days after completing the forensic review of the device or image, the government must use reasonable efforts to return, delete, or destroy any data outside the scope of the warrant unless the government is otherwise permitted by law to retain such data.

7.     The time periods set forth in this protocol may be extended by court order for good cause.

8.     In the forensic review of any device or image under this warrant the government must make reasonable efforts to use methods and procedures that will locate and expose those categories of files, documents, or other electronically-stored information that are identified with particularity in the warrant, while minimizing exposure or examination of irrelevant, privileged, or confidential files. to the extent reasonably practicable.

9.     For the purposes of this search protocol, the phrase "to preserve evidence" is meant to encompass reasonable measures to ensure the integrity of information responsive to the warrant and the methods used to locate same.

AO 93 (Rev. 12/09) Search and Seizure Warrant

# UNITED STATES DISTRICT COURT

for the

Northern District of California

| | |
|---|---|
| In the Matter of the Search of | ) |
| | ) |
| **Administrative Offices of Herguan University and** | ) Case No. **1 2 - 7 0 8 6 0** |
| **the University of East-West Medicine, located at** | ) |
| **595 Lawrence Expressway, Sunnyvale, California** | ) |
| | ) |

## SEARCH AND SEIZURE WARRANT

To:    Any authorized law enforcement officer

An application by a federal law enforcement officer or an attorney for the government requests the search of the following person or property located in the _____ Northern _____ District of _____ California _____
*(identify the person or describe the property to be searched and give its location):*
Administrative Offices of Herguan University and the University of East-West Medicine, located at 595 Lawrence Expressway, Sunnyvale, California, as described in Attachment A.

The person or property to be searched, described above, is believed to conceal *(identify the person or describe the property to be seized)*:
Evidence, fruits, and/or instrumentalities of violations of 18 U.S.C. §§ 2; 371; 1001(a)(3); 1028A; 1030(a)(3); 1546(a), as described in Attachment B.

I find that the affidavit(s), or any recorded testimony, establish probable cause to search and seize the person or property.

**YOU ARE COMMANDED** to execute this warrant on or before _____ 8-3-12 _____
                                                                              *(not to exceed 14 days)*

☑ in the daytime  6:00 a.m. to 10 p.m.      ☐ at any time in the day or night as I find reasonable cause has been established.

Unless delayed notice is authorized below, you must give a copy of the warrant and a receipt for the property taken to the person from whom, or from whose premises, the property was taken, or leave the copy and receipt at the place where the property was taken.

The officer executing this warrant, or an officer present during the execution of the warrant, must prepare an inventory as required by law and promptly return this warrant and inventory to United States Magistrate Judge
Paul S. Grewal
                            *(name)*

☐ I find that immediate notification may have an adverse result listed in 18 U.S.C. § 2705 (except for delay of trial), and authorize the officer executing this warrant to delay notice to the person who, or whose property, will be searched or seized *(check the appropriate box)*    ☐ for _____ days *(not to exceed 30).*
                                                                              ☐ until, the facts justifying, the later specific date of _____.

Date and time issued:  7-31-12 ; 3 pc                              *Judge's signature*

City and state:    San Jose, CA                              U.S. Magistrate Judge Paul S. Grewal
                                                                              *Printed name and title*

**Homeland Security Investigations**
San Francisco, California
Search Warrant Inventory

Date 8/2/2012  Time 18:10  Location HEEGUAN UNIV.  Case No. SF19SK11SF0088

Suspects JERRY WANG

| DESCRIPTION OF ITEMS SEIZED | LOCATION WHERE FOUND | FOUND BY | |
|---|---|---|---|
| 1 MISC. DOCUMENT | ROOM A | SA MACKEY | |
| 1 BAG MISC. DOCUMENTS | ROOM B | | |
| 1 BAG MISC. DOCUMENTS | ROOM C | | |
| FORENSIC IMAGE ONLY * W.D. 320 G.B. H.D. WCAV2W934667 | ROOM C | | |
| W.D. 80 G.B. H.D. WMAM9NT44804 | ROOM C | | |
| W.D. 80 G B H.D. WMAM9TY24246 | ROOM C | | |
| W.D 320 G.B H.D WMAY2DY16370 | ROOM C | | |
| W.D 80 G.B. H.D WMAM9TY56979 | ROOM C | | |
| SAMSUNG 500 GB HD. S2QQJ9G3408023 | ROOM C | | |
| 1 BAG MISC DOCUMENTS | ROOM D | | |
| 1 BOX MISC DOCUMENTS | ROOM E | | |
| 4 BAGS MISC DOCUMENTS | ROOM F | | |
| FORENSIC IMAGE ONLY * W.D. 500 G.B HD. WCAV9545321Z | ROOM F | | |
| W.D 80 GB HD WMAM9TY45211 | ROOM F | | |
| W.D 80 GB HD WMAM9ZE38796 | ROOM F | | |
| W.D 80 GB HD WMAM92E39066 | ROOM F | | |
| WD 80 GB HD WMAM9YR60750 | ROOM F | | |
| Seagate 250 GB HD 9VYBXMDC | ROOM F | | |
| 1 BAG MISC. DOCUMENTS/Receipts | ROOM G | | |
| TOSHIBA LAPTOP Y6120556Q | ROOM G | | |
| Compaq Computer 4CS1098G35 | ROOM G | | |

**Homeland Security Investigations**
San Francisco, California
Search Warrant Inventory

Date 8/2/2012   Time 18:10 Location Herguan Univ   Case No. SF19SR11SFO088

Suspects Jerry Wang

| DESCRIPTION OF ITEMS SEIZED | LOCATION WHERE FOUND | FOUND BY |
|---|---|---|
| U.S. PASSPORT | Room H | S.A. MACKEY |
| Chinese PASSPORT | Room H | |
| Chinese ID CARD | Room H | |
| Health Certification Booklet | Room H | |
| Scandisk Thumbdrive | Room I | |
| Compaq Computer 4CS10906G1J | Room I | |
| Sony VAIO Computer 3106900 | Room H | |
| Compaq Computer 4CS10980HC | Room H | |
| W.D. 80 GB H.D. WMAM9TS62948 | Room H | |
| 1 Bag MISC. DOCS | FRONT DESK LOBBY | |

# United States District Court

## FOR THE
### NORTHERN DISTRICT OF CALIFORNIA

VENUE: SAN JOSE

SEALED
COURT ORDER

FILED
JUL 2 4 2012
RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

UNITED STATES OF AMERICA,

V.

JERRY WANG

## CR 12 581

### DEFENDANT(S).

EJD HRL

---

# INDICTMENT

18 U.S.C. § 371 – Conspiracy to Commit Visa Fraud; 18 U.S.C. § 1546(a) – Visa Fraud; 18 U.S.C. § 1030(a)(3) – Unauthorized Access to a Government Computer; 18 U.S.C. § 1001(a)(3) – Use of False Documents; 18 U.S.C. § 1028A – Aggravated Identity Theft; 18 U.S.C. § 2 – Aiding and Abetting; 18 U.S.C. § 982(a)(6)(A)(ii) – Forfeiture

A true bill.

_____ Foreman

Filed in open court this ___24th___ day of ___July 2012___

_____ Clerk

**NO BAIL ARREST WARRANT**  Bail $ ___No Bail___



DOCUMENT NO          CSA's INITIALS
ROSE MAHER
for 1 defendant
DISTRICT COURT
CRIMINAL CASE PROCESSING

EXHIBIT '6'

1   MELINDA HAAG (CABN 132612)
    United States Attorney

2

3

4

5

6

7

*SEALED BY COURT ORDER*

*FILED*

*JUL 24 2012*

*RICHARD W. WIEKING*
*CLERK, U.S. DISTRICT COURT*
*NORTHERN DISTRICT OF CALIFORNIA*

8                           UNITED STATES DISTRICT COURT

9                          NORTHERN DISTRICT OF CALIFORNIA

10                                 SAN JOSE DIVISION

11

12   UNITED STATES OF AMERICA,            )   No. **CR   12   5581** EJD
                                          )
13            Plaintiff,                  )   VIOLATIONS: 18 U.S.C. § 371 — Conspiracy
                                          )   to Commit Visa Fraud; 18 U.S.C. § 1546(a) —
14                                        )   Visa Fraud; 18 U.S.C. § 1030(a)(3) —
                                          )   Unauthorized Access to a Government
15        v.                              )   Computer; 18 U.S.C. § 1001(a)(3) — Use of
                                          )   False Documents; 18 U.S.C. § 1028A —
16   JERRY WANG,                          )   Aggravated Identity Theft; 18 U.S.C. § 2 —
                                          )   Aiding and Abetting; 18 U.S.C.
17            Defendant.                  )   § 982(a)(6)(A)(ii) — Forfeiture
                                          )
18   _____)   SAN JOSE VENUE

19                                  INDICTMENT

20   The Grand Jury charges:

21                          INTRODUCTORY ALLEGATIONS:

22        At all times relevant to this Indictment:

23        1.      Defendant JERRY WANG was the Chief Executive Officer of Herguan

24   University ("Herguan") and of the University of East-West Medicine ("UEWM"), located on the

25   same campus in Sunnyvale, California.

26        2.      Y.W., WANG's father, was the President of Herguan, and the founder and

27   President of UEWM.

28        3.      S.T., WANG's mother, was Herguan's Chief Financial Officer.


     INDICTMENT

## STUDENT VISA PROGRAM

4.      The Immigration and Nationality Act, Title 8, United States Code, Section 1101, identifies several categories of foreign nationals who may be admitted to the United States for nonimmigrant purposes. One such category, designated "F-1" based on the applicable statutory subsection, comprises bona fide students coming temporarily to study at an approved school.

5.      Students entering the United States on a F-1 visa are admitted for a temporary period called "duration of status," which federal regulations define as the time during which the student is pursuing a full course of study at an approved school. When a student stops pursuing a full course of study, the duration of status ends and the temporary period for which the individual was admitted expires.

6.      A school seeking approval to admit foreign students must submit a Petition for Approval of School for Attendance by Nonimmigrant Student, also called a Form I-17, to the United States Department of Homeland Security ("DHS"), Student and Exchange Visitor Program (SEVP) in Washington, D.C. The I-17 is first submitted electronically, through the Student and Exchange Visitor Information System ("SEVIS"). As part of the I-17 approval process, SEVP conducts a site inspection, during which the inspector collects an original, signed I-17 and supporting documents. For an unaccredited school, the supporting documents must include evidence establishing that its courses have been and are unconditionally accepted by at least three accredited institutions of higher learning.

7.      The petitioning school must also provide SEVP with a Record of Designated School Officials ("DSOs"), called a Form I-17A, which the DSOs must sign to certify their knowledge of and intent to comply with student immigration laws and regulations. Once a school is approved, its DSOs are issued login IDs and passwords enabling them to access SEVIS. SEVIS is a nonpublic computer system located in Rockville, Maryland, which is used by the United States government and operated through SEVP for the purpose of collecting nonimmigrant student information from approved schools and monitoring such aliens' status.

8.      To enter the United States on a student visa, a foreign national must present a Certificate of Eligibility for Nonimmigrant ("F-1") Student Status, also known as a Form I-20,

INDICTMENT                                    2

1  which is printed from SEVIS. An "initial I-20" certifies that the student has been accepted for

2  enrollment in a full course of study, and is signed by a DSO. The school activates the student's

3  SEVIS record and prints an "active I-20" after the student arrives and begins making normal

4  progress toward a full course of study, which requires physical attendance. The school's DSOs

5  are required to report in SEVIS within 21 days the failure of any student to maintain active status.

6

7  COUNT ONE: (18 U.S.C. § 371 – Conspiracy to Commit Visa Fraud)

8      9.      Paragraphs 1 through 8 of this Indictment are hereby re-alleged and

9  incorporated by reference as if set forth in full herein.

10     10.     Beginning at least in or about July 2007 and continuing through at least in or

11  about February 2011, in the Northern District of California and elsewhere, the defendant,

12                              JERRY WANG,

13  and others did knowingly and willfully conspire to commit visa fraud, by forging and falsely

14  making documents prescribed by statute and regulation for entry into and as evidence of

15  authorized stay in the United States, specifically, Forms I-20 authorizing foreign students to enter

16  and stay in the United States, in violation of Title 18, United States Code, Section 1546(a).

17                    MANNER AND MEANS OF THE CONSPIRACY

18     11.     WANG and others caused Herguan University to submit to SEVP a Form I-17 to

19  admit foreign students, a Form I-17A identifying the school's DSOs, and supplemental

20  documentation. These submissions contained false representations regarding

21  Herguan's students and false transfer letters, as well as false promises by WANG as Herguan's

22  DSO to comply with all federal regulations regarding nonimmigrant students.

23     12.     After Herguan received SEVP approval to admit F-1 students, WANG and others

24  caused a Herguan employee to access WANG's SEVIS account without SEVP authorization to

25  enter data and create I-20s for Herguan students. At WANG's instruction, the Herguan employee

26  presented the printed I-20s to Y.W. and S.T. to forge WANG's signature when WANG was

27  unavailable. At WANG's instruction, the forged I-20s were disseminated to Herguan students.

28  ///

INDICTMENT                                    3

02/04/2030  07:20                                                    P.008/015

13.    WANG and others collected tuition and other payments from Herguan students in exchange for maintaining them in active F-1 status.

14.    WANG made false representations and submitted false documents to DHS agents and SEVP officials, who contacted Herguan to ensure compliance with applicable regulations. In response to interviews and Requests for Evidence from SEVP, WANG made false representations regarding Herguan's classes and school policies and provided false documents, including a newly created Academic Warning Letter.

## OVERT ACTS

15.    In furtherance of the conspiracy and to effect the objects of that conspiracy, in the Northern District of California and elsewhere, WANG and others committed the following overt acts, among others:

a.    On or about July 6, 2007, on behalf of Herguan University, Y.W. caused the electronic submission of a Form I-17 to SEVP.

b.    On or about July 30, 2007, WANG provided a SEVP Inspector with a hard copy of the Form I-17, signed by Y.W., and a supplemental Form I-17A, signed by Y.W. and WANG, naming WANG as a DSO.

c.    On or about July 30, 2007, WANG provided the same SEVP Inspector with a false transfer letter, purporting to represent that a certain school unconditionally accepts and had accepted transfer credits from Herguan.

d.    On or about August 16, 2007, WANG caused SEVP to receive three letters falsely representing that Herguan students were employed by the signatories.

e.    On or about August 16, 2007, WANG caused SEVP to receive two false Herguan transcripts, containing UEWM students' true names, dates of birth, and social security numbers.

f.    In or about May 2009, WANG instructed a Herguan employee to use WANG's identification code and password to access SEVIS.

///
///

INDICTMENT                                    4

g.      On or about December 2, 2010, WANG emailed a member of Herguan's management, asking him to create an academic warning letter, for the purpose of providing it to SEVP in response to a Request for Evidence.

All in violation of Title 18, United States Code, Section 371.

COUNTS TWO THROUGH FIVE:   (18 U.S.C. §§ 1546(a) & 2 – Visa Fraud; Aiding and Abetting)

16.     Paragraphs 1 through 8 of this Indictment are hereby re-alleged and incorporated by reference as if set forth in full herein.

17.     On or about the dates listed below, in the Northern District of California and elsewhere, the defendant,

JERRY WANG,

did knowingly cause another to forge and falsely make a document prescribed by statute and regulation for entry into and as evidence of an authorized stay in the United States, specifically a Form I-20 for each of the following individuals, and did knowingly cause another to use, attempt to use, possess, obtain, and receive such document, knowing it to be forged, falsely made, and procured by means of a false claim and statement, and to have been otherwise procured by fraud and unlawfully obtained:

| Count | Approx. Date | Name |
|-------|--------------|------|
| 2 | September 20, 2010 | D.K. |
| 3 | September 21, 2010 | S.J. |
| 4 | September 21, 2010 | V.A. |
| 5 | September 23, 2010 | T.K. |

All in violation of Title 18, United States Code, Sections 1546(a) and 2.

/ / /
/ / /
/ / /
/ / /

INDICTMENT                                    5

COUNT SIX:  (18 U.S.C. §§ 1030(a)(3) and 2 – Unauthorized Access to a Government
Computer; Aiding and Abetting)

18.    Paragraphs 1 through 8 of this Indictment are hereby re-alleged and
incorporated by reference as if set forth in full herein.

19.    Between in or about May 2009 and in or about August 2010, in the Northern
District of California and elsewhere, the defendant,

JERRY WANG,

did knowingly and intentionally cause another to access, without authorization, a nonpublic
computer of a department and agency of the United States, specifically DHS's SEVIS, which is
used by and for the Government of the United States and such conduct affects that use by and for
the Government of the United States, in violation of Title 18, United States Code, Sections
1030(a)(3) and 2.

COUNTS SEVEN THROUGH THIRTEEN:  (18 U.S.C. § 1001(a)(3) – Use of False Document)

20.    Paragraphs 1 through 8 of this Indictment are hereby re-alleged and
incorporated by reference as if set forth in full herein.

21.    On or about the dates listed below, in the Northern District of California and
elsewhere, the defendant,

JERRY WANG,

did knowingly make and use a false writing and document knowing it to contain a materially
false, fictitious, and fraudulent statement, in a matter within the jurisdiction of the executive
branch of the United States, specifically DHS, by providing SEVP personnel with the following:

| Count | Approx. Date | Document Description |
|-------|-------------|---------------------|
| 7 | July 30, 2007 | Transfer letter dated July 9, 2007, from the Academy of Chinese Culture & Health Services |
| 8 | August 16, 2007 | Employment letter regarding C.Z. from UEWM |
| 9 | August 16, 2007 | Employment letter regarding S.G. from Vital Core Biosystems |
| 10 | August 16, 2007 | Employment letter regarding D.W. from International Institutes for Health and Healing |

INDICTMENT

6

| 11 | August 16, 2007 | Herguan Transcript for C.Z. |
| 12 | August 16, 2007 | Herguan Transcript for S.G. |
| 13 | December 16, 2010 | Herguan Academic Warning Letter |

All in violation of Title 18, United States Code, Sections 1001(a)(3).

COUNTS FOURTEEN AND FIFTEEN: (18 U.S.C. § 1028A – Aggravated Identity Theft)

22.     Paragraphs 1 through 8 of this Indictment are hereby re-alleged and incorporated by reference as if set forth in full herein.

23.     On or about December 16, 2010, in the Northern District of California and elsewhere, the defendant,

JERRY WANG,

during and in relation to felony violations of 18 U.S.C. §§ 1001(a)(3), 1030(a)(3), and 1546(a), did knowingly transfer, possess, and use, without lawful authority, a means of identification of another person, specifically the name, social security number, and date of birth of the following individuals:

| Count | Name |
|-------|------|
| 14 | C.Z. |
| 15 | S.G. |

All in violation of Title 18, United States Code, Section 1028A.

FORFEITURE ALLEGATION: (18 U.S.C. § 982(a)(6)(A)(ii))

24.     Paragraphs 1 through 8 of this Indictment are hereby re-alleged and incorporated by reference as if set forth in full herein.

25.     Upon a conviction for Counts 1 through 5 of this Indictment, a violation of 18 U.S.C. § 1546(a) or conspiracy to violate the same, the defendant,

JERRY WANG,

shall forfeit to the United States, pursuant to 18 U.S.C. § 982(a)(6)(A)(ii), any property, real or personal (I) that constitutes or is derived from or is traceable to the proceeds obtained directly or

INDICTMENT                                  7

1  indirectly from the commission of the offense of conviction; or (II) that is used to facilitate, or is
2  intended to be used to facilitate, the commission of the offense of conviction.

3      26.    If, as a result of any act or omission of the defendants, any of said property

4          a.    cannot be located upon the exercise of due diligence;

5          b.    has been transferred or sold to or deposited with, a third person;

6          c.    has been placed beyond the jurisdiction of the Court;

7          d.    has been substantially diminished in value; or

8          e.    has been commingled with other property which cannot be divided without

9              difficulty;

10  any and all interest defendants have in any other property up to the value of the proceeds
11  traceable to said offense, shall be forfeited to the United States pursuant to 21 U.S.C.
12  § 853(p), as incorporated by 18 U.S.C. § 982(b)(1).

13      All in violation of Title 18, United States Code, Section 982(a)(6)(A)(ii) and (b)(1), and
14  Rule 32.2 of the Federal Rules of Criminal Procedure.

15

16  DATED: July 24, 2012                    A TRUE BILL.

17

18                                          FOREPERSON

19

20  MELINDA HAAG
    United States Attorney
21

22

23  MIRANDA KANE
    Chief, Criminal Division
24

25  (Approved as to form: _____ )
                            AUSA WEST

26

27

28

INDICTMENT                    8

02/04/2030 07:21 #6281 P.013/015
AO 257 (Rev. 5/78)

## DEFENDANT INFORMATION RELATIVE TO A CRIMINAL ACTION - IN U.S. DISTRICT COURT

BY: ☑ COMPLAINT ☐ INFORMATION ☒ INDICTMENT
☐ SUPERSEDING

---- OFFENSE CHARGED ----

See Attached Penalty Sheet
☐ Petty
☐ Minor
☒ Misde-meanor
☒ Felony

PENALTY: See Attached Penalty Sheet

*SEALED BY COURT ORDER*

---- PROCEEDING ----

Name of Complaintant Agency, or Person (& Title, if any)
ICE/HSI

☐ person is awaiting trial in another Federal or State Court,
give name of court

☐ this person/proceeding is transferred from another district
per (circle one) FRCrp. 20, 21, or 40. Show District

☐ this is a reprosecution of
charges previously dismissed
which were dismissed on motion
of:                                SHOW
☐ U.S. ATTORNEY ☐ DEFENSE      DOCKET NO.

☐ this prosecution relates to a
pending case involving this same
defendant                          MAGISTRATE
                                   CASE NO.
☐ prior proceedings or appearance(s)
before U.S. Magistrate regarding this
defendant were recorded under

Name and Office of Person
Furnishing Information on this form    Hartley M. K. West, AUSA

☒ U.S. Attorney ☐ Other U.S. Agency

Name of Assistant U.S.
Attorney (if assigned)         Hartley M. K. West

Name of District Court, and/or Judge/Magistrate Location
NORTHERN DISTRICT OF CALIFORNIA
SAN JOSE DIVISION

*FILED*

---- DEFENDANT - U.S ----
JUL 24 2012
▶ JERRY WANG
RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

DISTRICT COURT NUMBER

CR 12 581 *EJD*

---- DEFENDANT ----

IS *NOT* IN CUSTODY
Has not been arrested, pending outcome this proceeding.
1) ☒ If not detained give date any prior
summons was served on above charges ▶ *HRL*

2) ☐ Is a Fugitive

3) ☐ Is on Bail or Release from (show District)
Northern District of California

IS IN CUSTODY
4) ☐ On this charge

5) ☐ On another conviction        } ☐ Federal ☐ State

6) ☐ Awaiting trial on other charges
If answer to (6) is "Yes", show name of institution

Has detainer ☐ Yes      If "Yes"
been filed?  ☐ No        } give date
                           filed

DATE OF     ▶               Month/Day/Year
ARREST
Or... if Arresting Agency & Warrant were not

DATE TRANSFERRED           Month/Day/Year
TO U.S. CUSTODY

☐ This report amends AO 257 previously submitted

---- ADDITIONAL INFORMATION OR COMMENTS ----

PROCESS:
☐ SUMMONS ☒ NO PROCESS* ☒ WARRANT     Bail Amount: No Bail

If Summons, complete following:
☐ Arraignment ☐ Initial Appearance
Defendant Address:

* Where defendant previously apprehended on complaint, no new summons or
warrant needed, since Magistrate has scheduled arraignment

Date/Time:                     Before Judge:

Comments:

**United States District Court**
**Northern District of California**

SEALED BY COURT ORDER

## CRIMINAL COVER SHEET



FILED
JUL 24 2012
RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

**Instructions:** Effective January 3, 2012, this Criminal Cover Sheet must be completed and submitted, along with the Defendant Information Form, for each new criminal case. Please place this form on top of the Defendant Information Form.

**Case Name:**

USA v. Jerry Wang

**Case Number:**

CR 12 581

EJD HRL

**Total Number of Defendants:**

1 ✓      2-7 _____      8 or more _____

**Is This Case Under Seal?**

Yes ✓      No _____

**Does this case involve ONLY charges under 8 U.S.C. § 1325 and/or 1326?**

Yes _____      No ✓

**Venue (Per Crim. L.R. 18-1):**

SF _____   OAK _____   SJ ✓

**Is this a death-penalty-eligible RICO Act gang case?**

Yes _____      No ✓

**Assigned AUSA (Lead Attorney):**
HARTLEY M. K. WEST

**Comments:**

**Date Submitted:**
7/24/2012

December 2011

PRINT